STATE EX REL. CITY OF WEST ALLIS, Respondent, vs. MIL-
WAUKEE LIGHT, HEAT & TRACTION COMPANY and an-
other, Appellants.

*October 4—October 23, 1917.*

*Statutes: Construction: Street railways: Consent by town supervisors
to use of highways: Conditions: Repair of streets: Paving and.
repaving.*

1. The maxim *Expressio unius est exclusio alterius* as a rule of
   statutory construction is not to be so applied as to defeat a
   plain legislative purpose.
2. Although sec. 1863, Stats., expressly provides that the consent of
   a village board to the use of a highway for street railway pur-
   poses is to be given "upon such terms and subject to such rules.
   and regulations" as the board may prescribe, but contains no.
   similar provision as to the consent given by town supervisors,
   it nevertheless by plain implication empowers such supervisors.
   to burden their consent with reasonable terms and conditions.
3. Such terms and conditions of the consent given by town super-
   visors might properly include a condition that the street rail-
   way company should "make and keep in good and thorough re-
   pair, at its own cost and charge," its track zone; and in such a
   case a city thereafter organized within the town had authority
   to require by ordinance that the company repair or pave its
   track zone in a street of the city with the same material used
   by the city on the other portions of the street.

APPEAL from a judgment of the circuit court for Milwau-
kee county: GEO. W. BURNELL, Judge. *Affirmed.*

*Mandamus* action to compel appellants to pave their
street-car zone in the city of *West Allis* with creosote blocks
on a permanent concrete foundation.

In 1894 the Milwaukee Street Railway Company, pred-
ecessor of appellants, obtained consent of the boards of su-
pervisors of the towns of Greenfield and Wauwatosa, in Mil-
waukee county, to construct, maintain, and operate a street
railway line in such towns, using highways thereof for that
purpose. Such consent was applied for and granted under
sec. 1863, Stats., which then provided as to the use by street

railway corporations of highways in towns for the purposes of constructing, maintaining, and operating their railways as follows:

"Corporations may be formed and governed in like manner for the purpose of building, maintaining and using street railways, with rails of wood or iron, in any village or town; . . . and for that purpose, with the consent of the board of trustees of any village, and with the written consent of a majority of the supervisors of any town, in, into or through which such railway . . . may extend, may lay and operate their railways . . . upon, across or along any highway, but not so as to obstruct the common public travel thereon. In any village the consent of the board of trustees shall be given by ordinance, and upon such terms and subject to such rules and regulations and the payment of such license fees as the board may prescribe."

Assuming that such statute enabled the towns to impose conditions in granting the consent applied for, it was granted and accepted subject to the following limitations:

"The said board of supervisors of the towns of Greenfield and Wauwatosa shall have the power at all times to make such reasonable regulations as the public safety or convenience may require over that portion of said railway exclusively within the limit of said towns of Greenfield and Wauwatosa.

"The surface of the tracks of said railway shall be laid even with the surface of the street, and the said corporation, its successors and assigns, shall make and keep in good and thorough repair at its own cost and charge, so much of said highways upon which the tracks shall be laid and operated and one foot outside the rail; and said company shall use only what is known as a flat or girder rail in the construction thereof."

In due course the village of West Allis was organized out of such towns and was succeeded by the respondent city. For some time prior to 1916 the streets upon which the street railway tracks were maintained were surfaced with macadam. That being unsatisfactory and out of repair, it

was determined by the municipality to replace it with a permanent creosote block pavement on a concrete foundation and, to that end, it passed an ordinance requiring as follows:

"Section 3. It shall be the duty of every such street railway company now or hereafter operating and maintaining its street railway upon any street or highway in said city, at all times to keep in good and thorough repair, at its own cost and charge, so much of said street or highway upon which its tracks shall be laid and operated, between the rails and for one (1) foot on the outside of each rail as laid and the space between the two inside rails of its double tracks with the same material and identical specifications as the city shall have last used in paving and repaving that portion of the street or highway, not included in the space or portion of said street or highway which this section makes it the duty of said street railway company to keep in repair.

"Section 4. Whenever the said city shall have determined that it is necessary to repair any street or highway upon which any street railway company is operating its cars and maintaining its tracks by paving or repaving said street or highway, it shall be the duty of said street railway company to pave that portion of said street or highway upon which its tracks are laid and operated, between the rails for one foot outside of the outside of each rail as laid and the space between the two inside rails of its double tracks, with the same materials and specifications used by the city."

The respondent, city of *West Allis,* complied with all the conditions precedent to require appellants to pave their street-car zone in said city with creosote blocks on a permanent concrete foundation if said city possessed power to make such requirements. In defiance thereof appellants proceeded to resurface the space in question with macadam, whereupon this proceeding was commenced to compel compliance with such ordinance. Appellants made return to the alternative writ admitting the alleged refusal to comply with the city ordinance and denying that any part of the track zone was, or had been, out of repair. The return was demurred to for insufficiency. The appellants contended that respondent had

no right to compel them to pave the street-car zone as required and the issue formed by the return and the demurrer turned on that question. The demurrer was sustained.

For the appellants there was a brief by *Van Dyke, Shaw, Muskat & Van Dyke,* attorneys, and *Miller, Mack & Fairchild,* of counsel, and oral argument by *Ralph M. Hoyt* and *Edwin S. Mack,* all of Milwaukee.

*Joseph E. Tierney,* city attorney, for the respondent.

MARSHALL, J. Was it competent for the supervisors of the towns of Greenfield and Wauwatosa to burden the consent granted to the street railway company with conditions? That is the principal question to be considered on this appeal. If it must be answered in the affirmative, evidently the conditions might extend to regulations in respect to preserving and maintaining the highways in a suitable condition for public travel, which, in our opinion, according to the logic of *State ex rel. Milwaukee v. Milwaukee E. R. & L. Co.* 151 Wis. 520, 139 N. W. 396; *Madison v. Southern Wis. R. Co.* 156 Wis. 352, 146 N. W. 492; and *State ex rel. Milwaukee v. Milwaukee E. R. & L. Co.* 165 Wis. 230, 161 N. W. 745, would include such requirements as the one complained of, and that there is nothing in *La Crosse v. La Crosse G. & E. Co.* 145 Wis. 408, 130 N. W. 530, inconsistent therewith. So if we reach the conclusion that the supervisors were competent to so burden their consent, it would be useless to go further and discuss other propositions suggested in the briefs of counsel.

The case really comes down to what was the purpose of the legislature in prohibiting the use of highways in any town for street railway purposes except upon condition precedent of consent being first obtained in writing of a majority of the board of supervisors of such town.

Counsel for appellants contend that the statute does not confer upon supervisors, in the circumstances under consid-

eration, any authority to burden their consent with terms. Unless there be some clear indication in the statute to the contrary, there can be little, if any, doubt but what the requirement of consent was for some important purpose having reference to preservation of the highways in a suitable condition for public use. It is insisted that there is such indication in that the requirement for consent as to towns is closely connected with the requirement as to villages and that, whereas the statute is silent as to terms of the consent in respect to the former, they are expressly provided for as to the latter. In that situation it is insisted that the maxim *"Expressio unius est exclusio alterius"* applies. The doctrine of express mention and implied exclusion is a mere rule of statutory construction to be applied, or not, in determining the legislative intent, according to circumstances. It is not an arbitrary rule. It has no application except to aid in solving uncertainty, and where there is such uncertainty it will aid very much or very little or not at all in solving it, according to the situation dealt with. It should never be applied so as to defeat a plain legislative purpose. That is well stated in Black on the Interpretation of Laws (2d ed.) 219, thus:

"The maxim *'Expressio unius est exclusio alterius'* is of very important, though limited, application in the interpretation of statutes. It is based upon the rules of logic and the natural workings of the human mind. But it is not to be taken as establishing a Procrustean standard to which all statutory language must be made to conform. On the contrary, it is useful only as a guide in determining the probable intention of the legislature, and if it should be clearly apparent, in any particular case, that the legislature did not in fact intend that its express mention of one thing should operate as an exclusion of all others, then the maxim must give way."

So, though the rule is a very valuable one and of frequent application, it is always to be applied with caution, keeping

in mind that its sole purpose is to aid in searching for the real intention which the language in question was used to express. *Swick v. Coleman,* 218 Ill. 33, 40, 75 N. E. 807; *Grubbe v. Grubbe,* 26 Oreg. 363, 370, 38 Pac. 182.

There is no more familiar rule to be resorted to in the construction of statutes than that the reason and spirit of the enactment are to be considered. *Harrington v. Smith,* 28 Wis. 43. Now the condition precedent of consent of a majority of the board of supervisors must, as before suggested, have been intended to serve some purpose with reference to preservation of the public ways for ordinary use. It implies that the legislature intended the circumstances of each situation to be considered and that the supervisors would exercise some discretion, having reference thereto, and grant the consent on such terms as would, in their judgment, satisfy the particular situation. The idea that the requirement does not serve any purpose at all, is so unreasonable that we cannot adopt it. It seems contrary to reason and authority.

As indicated in the brief of counsel for respondent, Judge Elliott at sec. 1081, vol. 3 (2d ed.), of his work on Railroads, carefully considered this subject and, upon reason and authority, came to the conclusion we have reached and thus expressed his views:

"Where a municipal corporation has power to grant or refuse a railway company the right to use its streets as it sees fit, or where consent is required before any company can use them, it has, we think, authority to prescribe the terms and conditions upon which the company shall have the right to construct and operate a railway in its streets."

We approve of that and are of the opinion that the legislature, having made the consent to use the highways a condition precedent, shows so clearly an intention to confer upon the supervisors authority to burden the consent with reasonable terms to conserve the public welfare, that the maxim relied on by counsel for appellants has no application. It

must give way to the obvious purpose of the lawmakers to empower the supervisors to burden their consent with conditions which, as before stated, according to the logic of our previous decisions, includes authority to require the doing of such things as were required in the particular instance.

What has been said is in harmony with *Manitowoc v. Manitowoc & N. T. Co.* 145 Wis. 13, 129 N. W. 925, where several well considered cases are referred to holding that when consent of a municipality is a condition precedent to the use of its streets for railway purposes, such consent may be burdened with such reasonable terms as the public welfare, in the judgment of the authorities empowered to deal with the matter, require, having regard, of course, to legislative purpose.

It does not seem best to further discuss the case. More could not well be said to show that the right of reserving the consent includes authority to make such regulations of the use of the street as those complained of, than was said of quite similar regulations in *Madison v. Southern Wis. R. Co.* 156 Wis. 352, 146 N. W. 492. The language used here was very broad and comprehensive. It was to "make such reasonable regulations as the public safety or convenience may require." That limitation was in connection with the obligation of the railway company to "keep in good and thorough repair at its own cost and charge" its track zone. The consent was for a very long term which was given much significance in the *Madison Case* in determining the scope of the power reserved to the municipality and the duty assumed by the railway company, indicating that the duty to repair had reference not only to present but the reasonable requirements of changed conditions. The terms of the consent were as binding as like terms would be in any franchise. This court in *State ex rel. Milwaukee v. Milwaukee E. R. & L. Co.* 151 Wis. 520, 139 N. W. 396, and *Madison v. Southern Wis. R. Co., supra,* adopted as a rule for this state the

doctrine deduced by Judge Elliott in his work on Roads & Streets, vol. 2 (3d ed.), at secs. 987, 988, from many authorities. This, as stated in the *Madison Case:*

"Where the franchise granted to build, maintain, and operate a street-car system contains an express requirement to repair, it continues with the life of the grant, creating a duty of such performance as will make that portion of the tract to which it relates conform to the changes outside thereof, made from time to time under the direction of the municipality in order to render the way suitable for public use, and such performance includes, in making repairs, after repaving by the municipality with the same material as before, and repaving by substitution of a different material to conform to this changed condition as well."

So it will be seen that having reached the conclusion that the terms of the consent given to the railway company were properly imposed, the requirement complained of must be held to be within such terms.

*By the Court.*—The judgment is affirmed.