**CITY OF HIGHLAND PARK v. DALLAS RY. CO. (No. 8784.)\***

(Court of Civil Appeals of Texas. Dallas. April 29, 1922. Rehearing Denied June 10, 1922.)

**1. Mandamus ⬅154(4)—Petition for mandamus requiring street railroad to repair tracks to conform to established grade on repavement held sufficient.**

Petition of city alleging that the city had ordered a particular street to be repaved and had complied with Rev. St. art. 1000, that defendant street railroad occupied a part of the street with its tracks, that such tracks were out of repair and not on a level with the grade of the street, that the railroad, though required to so do by ordinance enacted pursuant to article 854, refused to put its roadbed and tracks in repair and make them conform to the established grade, that the city could not proceed with the pavement until the railroad had complied with such ordinance, and that the street in its existing condition was dangerous to travel upon, held to state a cause of action for issuance of mandamus to require the railroad to repair tracks and make them conform to existing grade, notwithstanding article 1010, entitling city to assess abutting property for cost of pavement in proceedings under articles 1006–1017.

**2. Street railroads ⬅38—Statute requiring street railroads to keep roads in "repair" construed.**

Rev. St. art. 862, empowering cities to compel street railroads to keep roads in "repair, and to make them conform to the grades of the streets upon which their tracks may be laid, whenever such streets shall have been graded by the city," is not applicable merely to the restoration of a road to the original condition in which it existed, but entitles a city to require a railroad to reconstruct, pave, or repave its roadbed on the pavement of the other portion of the street by the city.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Repair—Repairs.]

**3. Street railroads ⬅38—Ordinance requiring street railroads to keep tracks in repair and in conformity to established grade and to keep roadbed paved held authorized by statute.**

Rev. St. art. 854, giving cities and towns control and power over their streets, held to

authorize an ordinance requiring street railroads to keep tracks in repair and in conformity with the established grade of the street, and to keep the space between the rails and two feet on the outside thereof paved in the same manner as the other portion of the street.

Appeal from District Court, Dallas County; J. E. Gilbert, Judge.

Mandamus by the City of Highland Park against the Dallas Railway Company. From judgment sustaining demurrer to the petition, the plaintiff appeals. Reversed and remanded.

Cockrell, McBride & O'Donnell, H. P. Edwards, and Spence, Haven & Smithdeal, all of Dallas, for appellant.

Templeton, Beall, Williams & Worsham, of Dallas, for appellee.

HAMILTON, J. This is an appeal from a judgment sustaining ·a general demurrer to appellant's petition for mandamus.

It was alleged that Highland Park was incorporated as a municipality in 1913 under the Town and Village Act of the State of Texas (Rev. St. 1911, §§ 1006–1069) and thereafter, in conformity with statutory provisions, the incorporation was changed so that it became incorporated as a city or town "with all the rights, powers, privileges, immunities and franchises conferred by the Constitution and acts of the Legislature upon cities and towns."

Appellee, Dallas Railway Company, was alleged to be a private corporation which operated lines of street railway in Dallas and Highland Park.

The following other material allegations were made: That Highland Park, as an incorporated city, has exclusive control and power over the streets and highways within its confines, with authority, among other things, to abate and remove encroachments and obstructions, to grade, gravel, repair, pave, or otherwise improve them whenever by required vote of the aldermen such improvements are declared to be a public interest; that on February 5, 1920, appellant and its city council ascertained it to be necessary to improve, among other streets, Beverly drive; that after determining to make the improvement, and pursuant to the accomplishment of that end, they complied in every particular with article 1000 of the Revised Civil Statutes; that the paving and improving of streets, including Beverly drive, were ordered by the city council, and that materials and methods of paving were selected; that at this time appellee was operating on Beverly drive a street railway and occupying a part of this street with its tracks and other property with which it was engaged in carrying passengers over the street for hire; that the city council assessed against appellee the whole cost of the improvement between and under the rails and tracks of the street railway and two feet on the outside thereof, and, by ordinance, levied a special tax upon the street railroad and other property of appellee so as to constitute such tax a lien on its property superior to all other liens except those for state, county, and municipal taxes.

It was alleged that the city council determined that Beverly drive should be improved by the laying, hot, of 1½-inch wearing surface of Uvalde rock asphalt on the old base, according to the specifications of appellant's engineers, and that the space occupied by the rails and tracks of railways and 2 feet on the outside thereof should be paid for in whole by their owners; that after proper steps had been taken a contract was made between the Uvalde Paving Company and appellant for the paving of Beverly drive; that subsequent to all other proceedings the council of Highland Park on May 31, 1920, amended the resolution of February 5, 1920, so as to provide that Beverly drive should be paved and improved with paving consisting of 1½-inch wearing surface of Uvalde rock asphalt, laid hot, to the intersection of the east line of Fairfield avenue with the north line of Beverly drive to Highland drive by grading, raising, filling in, and laying a 5-inch concrete base and wearing surface 1½ inches thick of Uvalde rock asphalt, laid hot, from Highland drive to Preston road.

It was alleged that on the same day the city council passed a resolution providing that the Dallas Railway Company should pay the whole cost of the improvement between and under the rails and tracks of its railways and two feet on the outside thereof, the assessment to be made after a hearing as provided by the law and ordinances; that the notice of the assessment given appellee was ignored by it; and that it refused to comply with the resolution.

It was alleged that on July 26, 1920, the city council of Highland Park, by ordinance, levied an assessment against appellee for the part of the cost of paving the portion of Beverly drive occupied by its tracks and properties. It was alleged that after the enactment of such ordinances and resolutions the Uvalde Paving Company, under contract, paved and improved all of Beverly drive which had been ordered to be paved and improved except that portion occupied by appellee and on which it had tracks, rails, and other property, which was a distance of about one block on said street; and it was alleged that all of the street except this portion occupied by appellee had been paved and improved in conformity with the wishes and determination of appellant.

It was alleged that all the owners of property abutting upon said street accepted the respective assessments made against them and had executed contracts agreeing to

pay for the paving and improving of this block of Beverly drive as assessed against them, but that the work could not be proceeded with because this portion of the street is occupied by the appellee company and its tracks and property, and that it had refused, and still refuses, to recognize as valid the assessment made against it, refuses to adjust its tracks to the grade of the street, refuses to repair the part of the street occupied by it, and refuses to co-operate with appellant with reference to paving and improving the street, but, on the contrary, defies appellant with reference to it.

It was alleged that Highland Park has an ordinance in force and effect which, in substance, provides that street railway companies whose tracks occupy any portion of the streets of the town of Highland Park shall at all times keep their tracks and rails and two feet on each side of the same level and in conformity with the grade of the streets, and declaring it to be the duty of any street railway company whose tracks are out of repair to repair them and keep them in constant and proper repair, and to pave and repave the portion of the streets between and under the tracks and rails and two feet on the outside thereof with the same material with which the remainder of the street on which they are situated is repaired, improved, and paved or repaved, and also upon a concrete subfoundation, and requiring such companies to keep the tops of the rails of their tracks level with the surface of the streets and keep the tracks in conformity with the grade of the streets, and providing that, whenever any tracks of such railway company are out of repair, not in conformity with the grade of the street, or whenever the space between the rails and the tracks and two feet on the outside thereof is not kept level and in proper repair and condition with the same kind of material as that with which other portions of the street is paved, or whenever any rail shall not be on a level with the surface of the street on which it is laid, then it shall be the duty of the railway company forthwith "to put the same in proper repair and condition as required by said ordinance." It was also alleged that section 7 of this ordinance provides that—

"Whenever it shall be determined by the town council of the town of Highland Park to pave or repair any street, etc., on which a street car track is laid, and when the contract for such payment shall have been let, then, upon notice, it shall be the duty of any railway company, at its own expense, to pave and repair that portion of the street * * * between and under the tracks and rails of the company and two feet on the outside thereof, using for the surface the same kind of material and the same specifications as contracted for by the town for the balance of the street, unless by agreement some other material or specifications are ar-

ranged for between the city and any such railway company."

And it was alleged that the ordinance further required that in making such paving, repairing, etc., street railway companies should use only standard 103-pound grooved girder rails, to be laid on wood ties with a concrete subfoundation.

It was further alleged that the track of the railway company on Beverly drive was out of repair and had been a long time out of repair and out of conformity with the grade of the street, and that the space between the rails and the track and along the sides within two feet thereof was not level, but was out of repair and did not conform to the street grade, and that it was in such condition as to render impossible the paving and improving of the street by appellant and its contractor because of the alleged fact that, if the street were paved from the curb to within two feet of the rails on each side of the track, such paving would not conform to the tracks, and the rails would project above the paving and adjacent surface, and the water would penetrate and seep under the paving and impair it and ultimately destroy it; that the failure and refusal of the appellee to perform the duties alleged by appellant as resting upon it with reference to the paving and improving of the street occupied by it rendered impossible the paving and repairing of the street by appellant and its contractor for the additional reason that the street is occupied by appellee and its tracks, rails, and property, which appellant, it was alleged, could not remove and take up and re-lay because it was without the skill and the facilities for such work, and also because of the fact that appellee was using the tracks and rails and property daily in the operation of its business as a carrier, and that, should appellant attempt to repair and pave that portion of the street upon which the railway exists, the attempt would necessitate the taking possession of a part of the railway line and property and the removal of appellee's tracks and interference with its traffic, all of which was beyond the legal right of appellant; and also that appellant would have to employ engineers experienced in building street railway lines to re-lay the tracks and put them and the roadbed in proper condition for the paving and repairing to be done, which would be impossible because appellant has no money available for such use and has no lawful authority to appropriate money for such work.

It was alleged that, notwithstanding the statutes of Texas impose upon the appellee the duty and obligation of paving and repairing that portion of the street used by it, and notwithstanding that a lien exists upon its property for the assessment made against appellee for the amount of the cost of the paving and repairing of the portion of the

street which it was alleged to be the duty of appellee to pave, and that notwithstanding contracts had been let and all legal steps had been taken to protect appellant's rights as against appellee, appellee had failed and refused to pave and repair the street, and had declared that it would not pave or repair the part of the street used and occupied by it, but would continue to occupy the street and operate its cars thereon; and it was alleged that by this attitude and conduct appellee was not only preventing appellant from repairing and paving the street, but was endangering the property and lives of the inhabitants of Highland Park and other persons who traveled upon and over the portion of the street through which the railway extends, and that its rails project above the surface, that the street is rough and full of holes and dangerous to travel upon, and cannot be repaired, even though appellant were able and willing to pave and repair it, until and unless appellee will do the things appellant alleges it to be under the duty and obligation to do.

It was alleged to be impossible for appellant to pave or cause to be paved any of that part of the street on which the railway is located because of the fact that the railway is out of repair and the roadbed and tracks are in such condition as to prevent any paving of that part of the street; that, in order to pave the street upon which the tracks and rails of appellee's road extends, it is necessary that a bond or connection be made between the paving and the tracks and rails to keep water from under the paving; that, if the paving is not protected in this manner, water will seep under it and penetrate the ground beneath the paving, lift the paving, and cause it to break and destroy it within a short time, so that it would be a useless expenditure of the funds of the city and of the property owners living along that portion of the street occupied by appellee's tracks to pave on each side of the tracks and rails while appellee's tracks, roadbed, and rails are in the condition they are now in and before they are repaired. And it was alleged that, until the rails and tracks are made to conform with the grade of the street established by the city of Highland Park, appellant cannot pave or have paved any portion of the street in the block upon which appellee operates its cars. It was further alleged that, if the paving were done from the curb to within two feet of the rails on each side while the railway and the tracks and rails are in the condition they are now in, and with the tracks projecting above the grade of the street as graded by appellant, the paving would not last 12 months, but would be destroyed and broken and rendered useless as a pavement because of the penetration of water beneath it from the tracks and by the side of the rails, and that the

pavement would be elevated, would crack and break, and be destroyed by reason of the moving of the cross-ties up and down as the cars pass over and along the rails and tracks. And, in the same connection, it was alleged that the cross-ties upon which the rails are laid are rotten, and the rails are worn and loose and unstable, and the joints of the rails are worn and loose, and the tracks and the rails have become lowered and depressed and sink when a car passes over them, and that, as aforesaid, the movement of the rails and the cross-ties as cars pass over them would break and destroy the paving.

It was alleged that the street was formerly paved from curb to curb, and that appellee, without permission from appellant, tore up the paving between its tracks in places and left great holes in the street between its rails, which it attempted to fill with sand and gravel; that some parts of its tracks on the street have been raised above the established grade while others have been permitted to sink and become lower than the grade of the street; and it was alleged that the movement of the cross-ties up and down had already broken the pavement which formerly existed on the street, and that, as a result of such condition, the street occupied by appellee had become unsafe for the traveling public and for the citizens of Highland Park who have to use the street; that, in order to repair the road, roadbed, and tracks, it will be necessary for appellee to take up or elevate its tracks, put in new cross-ties, lay them in a concrete subfoundation so that they will be stable and not move up and down when cars pass over them; and also that it will be necessary to lay new rails on the cross-ties. And it was alleged that, if appellee would so repair its roadbed, road, and tracks in Beverly drive, appellant could make a bond or connection between the concrete subfoundation and the paving which it desires to put down on the street, and thereby proceed to pave the street to within two feet of the tracks on each side, but that until and unless appellee is compelled to repair its roadbed, road, and tracks and keep them in repair, making them conform to the established grade of the street, appellant can do nothing towards paving any portion of the street, and that appellee's failure to comply with the duty imposed upon it under article 862 of the Revised Civil Statutes of Texas has prevented and is preventing the paving of the street.

Such are the allegations, stated seriatim and more or less comprehensively, as they appear in the petition, and against which the general demurrer was interposed and sustained.

While the question the appeal presents is whether or not the situation described in the petition by properly pleaded material allega-

tions authorizes relief by mandamus, yet, between the statement and the final solution of this principal question are interposed propositions upon .the determination of which its solution rests.

What is the admitted situation, as revealed in the appellee's answer? By the answer comprehended within the scope of the general demurrer, appellee in effect says it admits that Highland Park has an ordinance requiring it to keep its tracks and rails and two feet on each side of them level and in conformity with the street grade, which requires it to keep its tracks in constant and proper repair and to pave and repave the streets between and under the tracks and rails and two feet on the outside thereof with the same material with which the balance of the. street along which the railway extends is repaired, improved, and paved or repaved, which requires it to construct a concrete subfoundation and to use only standard 103-pound grooved girder rails to be laid on wood ties with such concrete subfoundation. It says that, notwithstanding the admitted truth of all this, yet it will neither repair nor improve, and that appellant is without the right to a mandamus to compel the performance of such admitted requirement.

By virtue of the general demurrer, appellee admits its tracks to be out of repair and to have been a long time out of repair and out of conformity with the grade of the street. It admits and says that it is true that its track is in such condition as to make it impossible for the city to pave and improve the street, and that, if the street were improved and paved so far as the city is able to pave it, water would seep under the paving from the portion occupied by appellee's tracks and destroy the paving, solely because appellant cannot and appellee will not repair and improve its tracks. It admits it to be true that the city cannot take up and relay the track which appellee refuses to take up and re-lay before paving can be done. It admits that, although the street is full of holes and dangerous to travel upon, and notwithstanding its conduct and attitude in refusing to make its track conform to the street level and put its rails and cross-ties on a concrete foundation, thereby rendering it possible to pave the street, which otherwise cannot be paved, yet it is under no duty and obligation to conform to any of the alleged things essential to be done by it in order that the city can construct paving. It admits that, while the city is without the power or ability to install new material in the form of rails and cross-ties and construct a proper foundation for them to rest upon while appellee is operating its cars over the line of railway, and that although all this is necessary for the formation of bond or connection for pavement constructed on that portion of the street between the railway and the curb,

yet, notwithstanding such conditions, it is not required to remedy any of them. It admits that it has wrongfully torn up and destroyed paving previously existing between its tracks on Beverly drive and left great holes in the street between its rails; that its tracks have raised above the street grade in places and have been allowed to sink lower than the street grade in other places; that the movement of its cross-ties up and down has broken the pavement which formerly existed, which resulted in rendering the street unsafe for public travel. It admits that, while all these conditions brought about by it exist, the city is powerless to construct any pavement, and that while the city itself possesses no ability or skill or means to overcome such conditions and put the portion of the street occupied by it in proper condition for pavement, yet, athough appellee alone has the power so to do, the city cannot invoke the remedy sought in the circumstances alleged to exist.

By the answer appellee, in effect, says that by reason of all the facts and circumstances set forth in the petition Highland Park cannot pave the portion of the street occupied by it, or effectively pave any adjacent portion of it; that Highland Park cannot invoke the remedy by which it seeks to overcome such conditions and must remain powerless to construct any pavement upon the portion of Beverly drive through which appellee's railway extends.

The foregoing is the necessary effect of the general demurrer in the light of the material allegations of the petition.

Appellee seeks refuge in the provisions of article 1010, Revised Civil Statutes, and insists that appellant's exclusive right and exclusive remedy in relation to the subject-matter of this controversy are comprehended in and defined by that enactment.

Article 1010 is as follows:

"Subject to the terms hereof, the governing body of any city shall have power to assess against the owner of any railroad or street railroad occupying any highway ordered to be improved, the whole cost of the improvement between or under the rails and tracks of said railroad or street railroad and two feet on the outside thereof, and shall have power, by ordinance, to levy a special tax upon said railroad, or street railroad, and its roadbed, ties, rails fixtures, rights and franchises, which tax shall constitute a lien thereon superior to any other lien or claim, except state, county and municipal taxes and which may be enforced, either by sale of said property in the manner provided by law in the collection of ad valorem taxes by the city, or by suit against the owner in any court having jurisdiction. The ordinance levying said tax shall prescribe when same shall become due and delinquent, and the method or methods of enforcing the same."

The whole chapter of which the foregoing article is a part is comprised in articles 1006 to 1017, inclusive, of Revised Civil Statutes.

It is chapter 11. The last article provides that this chapter shall repeal no existing law pertaining to the subject dealt with, but that it shall be cumulative of such existing laws, the authority evinced by them remaining of unimpaired force. The purpose of this chapter is to empower, not to require, cities to improve their streets in pursuit of the method therein provided "by filling, grading, raising, paving or repaving the same in a permanent manner," etc.

[1] We do not believe that article 1010 of this chapter, which permits the pursuit of the method therein prescribed for effecting pavement on the portion of the street used by street railway companies, has the force to deny Highland Park relief by mandamus from the conditions its petition describes. If the allegations are true, if it cannot effectively pave the street between the curbs and the railway for the apparently plausible reasons assigned in the petition until the road is put in the condition it seeks to force appellant to put it in, and which, for reasons ascribed, appellant itself cannot put the road in, then the statute has no practical application to the case, and, despite the provisions of chapter 11, appellant is powerless to exercise its exclusive control and power over the street conferred upon it by other general statutory authority. Article 854, Rev. Civ. Stats.

This street was a paved street originally under the allegations of the petition. The paving has been destroyed. At least a part of the destruction was wrongfully and unlawfully wrought by appellee, taking the allegations to be true. The appellant is clothed with authority to repair. It also possesses the unquestionable statutory authority to compel the street railway company to repair that portion of the street by which its roadbed is actually occupied. It has the general power to pave. All this independent of chapter 11.

Appellant is responsible, under its general control and power over the streets, for their being maintained in a condition safe and convenient for public use. By express statutory authority this responsibility and requirement is transferred to appellee to so maintain the portion of the street used by it as a roadbed.

[2] Appellee presents with challenging force the proposition that, when used in contradistinction to each other, "repairs" and "improvements" of streets have plainly different respective legal meanings, and that article 862 of Revised Civil Statutes gives cities the right to compel street railways "to keep their roads in repair, and to make them conform to the grades of the streets upon which their tracks may be laid whenever such streets shall have been graded by the city," but does not require street railway companies to reconstruct, pave, or repave the streets, such work not being repairs, but improvements. It applies this proposition to the case before us.

That a clearly marked distinction between "repairs" and "improvements" of streets is recognized by the authorities is beyond question. At the same time, the weight of authority and the force of reason are against that narrow construction of the word "repair" used in statutes and franchises with reference to streets which would restrict it to mean only the restoration of a road to the original condition in which it existed in every instance at the time the street was appropriated to use by a street railway. The requirement must be applied in a progressive sense, and, we think, must be given a scope of sufficient breadth to mean not merely the restoring to a former condition, but rather, in making repairs, to conform to the actual necessity attending the development which naturally arises from and goes with the growth of cities and the corresponding intensified use of their streets. If, when the part of the street occupied by the track is to be repaired, the work of repairing is not to be done in relation to the improvement of the adjoining portions of the street, the repair would be without value, and the requirement would be incongruous and without practical significance. The power having been delegated in article 862 to Highland Park to impose upon the street railway company the duty of keeping the road in repair, and to supply "ample accommodation for the safe and convenient travel of the people on the street where the track runs, and Highland Park, by virtue of article 854, having exclusive control and power over its streets, etc., we cannot agree with the contention that the exercise of its conferred governmental authority over the streets to the extent of repaving must depend exclusively upon a statutory method of which it cannot avail itself against appellee because of conditions which render the methods there prescribed impractical and impossible. Such is the case alleged. Southern Wisconsin Ry. Co. v. Madison, 240 U. S. 457, 36 Sup. Ct. 400, 60 L. Ed. 742; State ex rel. Milwaukee v. Milwaukee Elec. Ry. & Light Co., 157 Wis. 139, 147 N. W. 239; State ex rel. Milwaukee v. Milwaukee Elec. Ry. & Light Co., 165 Wis. 230, 161 N. W. 745; State ex rel. Milwaukee v. Milwaukee Elec. Ry., 166 Wis. 163, 164 N. W. 844; State ex rel. City of West Allis v. Milwaukee, Light, Heat & Traction Co., 166 Wis. 178, 164 N. W. 837; Reading v. United Traction Co., 215 Pa. 250, 64 Atl. 446, 7 Ann. Cas. 380; Elliott on Roads and Streets, § 774; Memphis P. P. & B. R. Co. v. State, 87 Tenn. 746, 11 S. W. 946; N. Y. v. Metropolitan St. Ry. Co., 130 App. Div. 842, 115 N. Y. Supp. 878; N. Y. v. Harlem Bridge Ry. Co., 186 N. Y. 304, 78 N. E. 1072.

[3] The ordinance described in the petition

we believe to be authorized by article 854, giving cities and towns exclusive control and power over their streets. Whether or not this ordinance was ever accepted by appellant cannot be determined from the record, nor is its determination necessary to a disposition of the question presented.

This ordinance seems to us to be a reasonable exercise of control and power over the street. It imposes a duty and requirement upon appellee, which is using its streets under some character of implied franchise, and which, in a sense, is subjecting the streets to its special use for the emoluments and gain to be derived from the service it renders the public. We do not mean, of course, that the railway company, by operating its line, imposes a burden upon the street which is contrary to the legitimate uses of it by the public, and we recognize that appellee's lawful use of the street entirely conforms to the purpose to which it is dedicated. The fact remains, however, that appellee is subjecting the street to a special use from which it derives private gain, and, accordingly, it bears a special and distinct relation to the street which impliedly, at least, is accompanied by a special and particular duty towards the public, the performance of which we think is reasonably prescribed by the ordinance requiring it to repave the portion of the street dedicated to its use. This ordinance, as before stated, we think is a reasonable exercise of the powers delegated to appellant by the Legislature. Surely, if appellee has wrongfully destroyed a previously existing pavement on the portion of the street occupied by its track, in making repairs it could do no less than perform all the work of paving again, and, since we hold that repairs may include such operations as go beyond the mere restoration of a street to the extent of replacing it with material which conforms to that with which the portions of the street adjacent to the track are to be repaved, then, for the reasons indicated, we think appellee should be required to do all appellant seeks to compel it to do under the statute granting the municipality authority to compel appellee to keep its road in repair.

It is true that there is conflict in the authorities as to the power of the city to require repaving under mere provisions for repairs. However, we are of the opinion that those authorities which give the more expansive effect to the requirement to make repairs express the sounder view, which is that to be applied in this case.

The fact that the right to compel paving in some of those cases we cite existed by virtue of franchise provisions, while the right in the instant case is held to rest upon power delegated by statute and exercised through ordinance, does not impair the analogy of the cases. If the authority exists, its effectualness is not affected by the source from which it is derived.

We are of the opinion that article 1010 clearly contains nothing to require or permit the city to lay new ties and rails for appellee as a part of the street improvement, notwithstanding that it is necessary that these things be done as a prerequisite to the completion of the paving on the street occupied by appellee's track. The installation of new ties and rails is no part of the paving. If it is necessary, as alleged, that they be put in place and adjusted to the street grade in connection with the street improvement, the right to require their being placed by the street railway company is clear. Counsel for appellee say that the laying of 103-pound grooved girder rails and the placing of new ties are incident to the repaving of the street in the same sense that the construction of curbs and gutters are incident to paving, for the building of which the city may create a lien. These improvements, according to the allegations, are necessary in connection with the paving on this street only because the cars operate on it and will destroy the paving unless such equipment conforms to the alleged specifications. But the rails and ties are no part of the street construction, as such, while curbs and gutters are necessary adjuncts and parts of all streets. Their construction belongs to the city along all streets; their construction is a function to be performed by the government of the municipality. The construction of trackage for street railways is not. Curbs and gutters are property of the municipality; rails and cross-ties are not. They are property of the street railway. They are necessary to its operation as a corporation. They are not essentials of the street as such. They are a part of the equipment which belongs to the owners of the street railway. The city has no authority to purchase and install such equipment even though pavement on the street cannot be built and maintained unless it is installed, and should appellant purchase and install it no lien could exist to secure the expenditure for such purpose under article 1010, because such equipment is neither pavement nor an incident to pavement. This also applies to the subfoundation for the track.

The fact that the petition discloses that appellant is proceeding under the provisions of chapter 11 to effect the accomplishment of paving the street so far as that chapter applies to adjacent property owners, and the further fact that the petition discloses an effort in the first instance, which appears later to have been abandoned, to accomplish the paving of the portion of the street occupied by the street railway company under the provisions of article 1010, does not affect the right to the relief which it seeks in this case. Neither is any illegal discrimination worked against appellee. No valid lien arises

against appellee's property in the absence of actual paving by appellant, or under its direction, of the portion of the street appropriated and used by the street railway company. If that portion of the street could be paved by appellant and the paving were actually laid, the requirement with reference to time of payment would not necessarily be different from the time of making the expenditure by appellee in the event of its doing the work itself.

As we view the material allegations of the petition, they disclose a condition in the street brought about by the street railway company which renders impossible the laying of a pavement on the street until and unless appellee can be required to put in the character of cross-ties and rails described as being necessary in appellant's petition by placing them on a solid concrete foundation, by means of which the rails and ties may be made rigid so as not to break and destroy the paving and permit it to be undermined by the seepage of water. Furthermore, the petition discloses a condition with reference to the protrusion of the rails in places above the surface and the sinking of them in other places below the surface which renders the street unsafe and inconvenient to the traveling public, a condition which appellant is powerless to remedy unless appellee itself can be required to remedy this feature of the situation.

The rights, the convenience, and the safety of the whole public are impaired by reason of the circumstances delineated in the petition. The allegations disclose that appellant cannot adequately exercise its municipal power to remedy the situation under the terms of article 1010. If the facts alleged are true, then this article of the statutes does not supply a remedy altogether commensurate with the interests and the rights of appellant under the circumstances of this case. Such being true, it cannot be said that the law supplies an adequate and specific remedy.

"To supersede the remedy by mandamus the party must not only have a specific remedy, but one competent to afford relief upon the very subject-matter of his application, and one which is equally convenient, beneficial, and effective as the proceeding by mandamus."

We accordingly conclude that the allegations reveal a clear right to the remedy by mandamus to compel appellee to construct a concrete subfoundation and place thereon the kind of rails and ties it is alleged by appellant that it should install, and that such equipment should be made by appellee to conform to the surface of the street to be constructed by appellant. State of Indiana ex rel. City of Muncie v. Railway Co. (C. C.) 83 Fed. 284.

The judgment of the trial court is reversed, and the cause remanded.

Reversed and remanded.

### On Motion for Rehearing.

Appellee arduously insists that we have arrived at an erroneous conclusion, because as it contends, the effect of our decision is that appellant possesses the power to compel appellee to reconstruct its road, although there appears to be no power conferred upon appellant for such purpose either by statute or franchise.

It is asserted that the effect of the decision is to impute to and confer upon municipalities powers over street railways of such potentiality as to render it possible for a municipal government to destroy a street railway company by imposing upon it financial burdens which cannot be met as incidents to compliance with requirements of reconstruction.

Such argument can be neither refuted nor sustained without reference to facts peculiarly applicable to it, and in our disposition of this case no such facts enter into the consideration of it.

The question is: Has appellant alleged facts which, if true, disclose a situation which warrants extending the relief sought? The effect of the demurrer is to say that, granting all appellant's allegations to be true, yet the pleaded facts disclose nothing which a court will hear and base relief upon.

Appellee's counsel admit in argument of the motion for rehearing that in their judgment article 1010 of Revised Civil Statutes has no application whatever, and that nothing which appellant seeks to compel it to do by mandamus has such pertinence to paving that, if it were done by appellant or under its direction, a lien could be fixed or collection from appellee for the cost effected under the provisions of article 1010 or of any statutory provision related to this article.

Nothing appellant seeks to have appellee do can be done by appellant and charged to appellee by virtue of any specific statutory provision. Appellant is clothed with no special authority in the paving statutes to perform any of the acts or supply any of the material it seeks to require of appellee and charge the cost therefor against appellee or fix a lien against appellee's property on the theory that such work and material are necessary incidents of street paving.

So far as the pleadings disclose conditions, appellant is endeavoring to exercise its lawful control over a street upon which appellee has a lawful right and duty to operate its street railway. In the discharge of its duty appellant encounters a condition created by appellee which renders impossible the performance of appellant's obvious power and duty unless appellee can be compelled to

transform the obstructing conditions by compliance with the necessities alleged.

It is not contended that appellant has no power to pave any street which, in its judgment and discretion, the public interest demands to be paved, provided such paving can be done without entailing an expenditure by appellee alleged by appellant to be necessary, for definite reasons, in connection with paving the street subjected to appellee's use. The effect of this position is that, whenever the public interests in the streets conflict with the ascertainment by appellee of its own financial interests in operating its property upon the streets, the former should yield to the latter.

Of course, appellant cannot arbitrarily impose an unreasonable requirement upon appellee or lay upon it a financial burden of a confiscatory nature. But no question of this nature arises from the pleadings, with which alone we are dealing.

The conditions which appellant seeks to require appellee to remove by compelling it through the instrumentality of mandamus to do all the acts alleged to be necessary before the street can be paved effectively present the same situation as would exist if the prospective paving already were constructed on all parts of the street except that occupied by the roadbed, although appellee seeks to draw a distinction between the relative rights of the parties in such respective situations. These conditions bear the same relation to the rights of appellant in the one instance as in the other. If paving had already been constructed on the parts of the street attiguous to the roadbed, would appellee have the right to continue to leave its tracks lower than the paving in places and protruding higher in others so as to render general travel on the street unsafe and uncomfortable? Would it have the right in such situation to maintain cross-ties and rails so laid as to move up and down when cars pass over them and break and destroy the paving laid on other portions of the street solely upon the ground that the city is powerless in any event to cause it to remedy these conditions? Surely these questions call for an answer adverse to appellee. It is no answer to them to say that appellant may require an abandonment of the street by appellee and compel it to remove its equipment therefrom. Such proposition has no place in this case in its present attitude. The presumption is that the railway's presence on the street conforms to the mutual rights and desires of the parties. Why distinguish appellant's rights and powers with reference to needed paving about to be laid from those with reference to paving already constructed? In the one instance the alleged conduct of appellee prevents necessary paving. In the other it would impair or destroy the

paving if it already existed. Why should appellant be without the right to have the described conditions relative to appellee's roadway in the street removed immediately preceding or contemporaneously with the act of paving, thereby eliminating the peril which is alleged, by reason of facts stated, to be certain to destroy and render worthless any paving constructed without the immediate removal of such conditions as those depicted as caused solely by appellee's use of the street?

The case as presented, we have concluded, involves no question whatever of the right of appellant to require appellee to pave or to charge it and incumber its property for paving. The petition in the case, under the application of the test of a general demurrer, states a cause of action. It recites allegations of facts which disclose that appellee has deliberately declined to perform acts and amend conditions in its track and roadway which it is under a lawful duty to do. The petition itself, we think, fails to disclose or admit the existence of any facts to justify the nonperformance of a lawful duty appellee has the burden to discharge under the allegations. Whatever facts or circumstances may exist to justify the alleged attitude of appellee, if any do exist, are not before us, and it is not our province to indulge in conjecture or speculation as to whether or not such facts and circumstances exist.

The motion for rehearing is overruled.