Larry HATHAWAY, Petitioner-Appellant,

v.

JOINT SCHOOL DISTRICT NO. 1, CITY OF GREEN BAY, et al.;
Board of Education of Joint School District No. 1,
City of Green Bay, et al.; and Timothy G. Quinn,
Superintendent of Joint School District No. 1, City
of Green Bay, et al., Respondents-Petitioners.

Supreme Court

*No. 81–2298. Argued October 3, 1983.—Decided January 31, 1984.*

(Also reported in 342 N.W.2d 682.)

For the respondents-petitioners there was a brief by *J. D. McKay* and *Parins, McKay & Mohr, S.C.*, Green Bay, and oral argument by *J. D. McKay*.

For the petitioner-appellant there was a brief by *Stephen G. Katz, John Halla* and *Kelly, Haus & Katz*, Madison, and oral argument by *Stephen G. Katz*.

HEFFERNAN, C.J. This is a review of a published decision of the court of appeals, dated December 7, 1982, which reversed a judgment of the circuit court for Brown county, Robert J. Parins, Circuit Judge, which denied Larry Hathaway's petition for writ of mandamus to compel the Green Bay Board of Education of Joint School District No. 1 to permit him access to a computer-generated list of the names and addresses of parents of pupils enrolled in the school district.[1] We affirm the court of appeals and direct that the cause be remanded to the circuit court with directions to issue a writ of mandamus to compel the Green Bay Board of Education to make available for inspection the list of parents' names and addresses.

On June 4, 1981, Hathaway requested access to a computer-generated list of the names and addresses of all the parents of school children in the Green Bay school district. Hathaway, as executive director of the Green Bay Education Association (Association), requested the list so that the Association could contact the children's parents in regard to its position on matters being discussed in the collective bargaining agreement between it and the Joint School District of Green Bay. The Association is the certified collective bargaining representative for the professional teachers employed by the Joint School District of Green Bay (School District), one of the respondents.

The computer-generated list, requested by Hathaway, consists of the names and addresses of all parents who have one or more children in the Green Bay public school district, created by the School District for its use in mailing information to the parents of the school system's students. Through the means of a computer, the list of

[1] *Hathaway v. Joint School Dist. No. 1*, 110 Wis. 2d 254, 329 N.W.2d 217 (Ct. App. 1982).

names is transferred onto mailing-address labels, which are then individually placed on whatever mailing the School District desires to reach the attention of the parents.

The School District, through its attorneys, on July 15, 1981, denied Hathaway's request for the list, stating:

"[T]he District takes the position that the parent name labels to which you refer do not constitute public records as defined by Wisconsin law."

Hathaway, on August 24, 1981, filed a petition for writ of mandamus asking the circuit court to compel the School District to provide access to the list of parents' names and addresses. In the School District's return to petition for writ of mandamus, it reiterated its position that the list "is not a public record within the meaning of sec. 19.21 of the Wisconsin Statutes and is therefore not available . . . ."

A hearing on the petition for writ of mandamus was held on November 6, 1981, before Circuit Judge Robert J. Parins of Brown county. On that date, the circuit court noted that the School District's position was predicated upon a reading of the pupil record statute, sec. 118.125, Stats., which prohibits the disclosure of pupil records. The court acknowledged that a pupil record may not include director information concerning parents. It noted, however, that the list of names and addresses was gleaned from the records maintained by the School District for the individual pupil. Consequently, the list of parents' names and addresses constituted a pupil record within the purview of sec. 118.125 (1) and (2). The circuit court further recognized that the purpose of both the state and corollary federal statute, 20 U.S.C. sec. 1232g (Supp. 1976), is to safeguard the privacy of the student. It was satisfied that disclosure of the parents' names and addresses, derived from the pupil records, de-

feated the purpose of the legislation. The circuit court denied Hathaway's petition for writ of mandamus to order the School District to provide him access to the list.

The basis upon which the court of appeals reversed the circuit court is that the plain language of sec. 118.125, Stats., demonstrates the legislature's intent to protect certain personal information about pupils, nothing of which is correlated with the pupil's parents' names and addresses. It stated, "The mere fact that the information is gleaned from a pupil record does not make it a pupil record." 110 Wis. 2d at 255.

An analysis of the public records statute, sec. 19.21, Stats. (1979–80), as well as the pupil records statute, sec. 118.125 (1) and (2), 1979–80, leads us to conclude that sec. 118.125 does not create an exception to sec. 19.21 which includes a list of parents' names and addresses. Public policy and public interest favor the public's right to inspect public records. Without an exception based upon statute, common law, or an overriding public interest in nondisclosure, there is a presumption that the public has the right to inspect public records. The mere fact that information is gleaned from a pupil record does not make a public record a pupil record to which confidentiality is afforded. Accordingly, we affirm the court of appeals.

It is conceded by the litigants before this court that the list of names and addresses of parents of children in the Green Bay School District constitutes a public record within the purview of sec. 19.21, Stats, 1979–80. Section 19.21 (1) provides that:

"Custody and delivery of official property and records. (1) Each and every officer of the state, or of any county, town, city, village, school district, or other municipality or district, is the legal custodian of and shall safely keep

and preserve all property and things received from his predecessor or other persons and required by law to be filed, deposited, or kept in his office, or which are in the lawful possession or control of himself or his deputies, or to the possession or control of which he or they may be lawfully entitled, as such officers."

This statute, which governs the examination or inspection of public records, was created by ch. 178, Laws of 1917, and was formerly numbered 18.01. Prior to that time statutes authorized inspection in certain circumstances. Otherwise, the public's right to inspection of public records was governed by the common law. *International Union v. Gooding,* 251 Wis. 362, 371, 29 N.W. 2d 730 (1947) ; *State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 137 N.W.2d 470, 139 N.W.2d 241 (1965) ; *Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 279 N.W.2d 179 (1979).

In *Gooding, supra,* this court deemed that sec. 18.01, Stats., currently sec. 19.21 (1), dealt with three specific types of papers that must be kept by an office and delivered to a successor in office. Those three types of papers are:

"(1) Such books, papers, records, etc., as are *required by law* to be filed, deposited, or kept in his office; (2) books, papers, etc., *in his possession as such officer;* (3) books, papers, etc., to *the possession of which he is entitled as such officer."* *Id.* at 369.

The term, "public record," included not only those documents specifically required to be filed by the custodian of records, but all written papers made by an officer within his authority. *Id.* at 371; *Youmans, supra.* Thus, sec. 19.21 controls reports "required by law," as well as those "which are in the lawful possession or control" of the school district. These reports are denominated public records.

The list of names and addresses of parents who have children in the Green Bay School District is maintained, used, and updated by the School District for the purpose of communicating directly with the parents of its students regarding issues and concerns. The list of parents' names and addresses is generated by a computer on address labels which are in the care and custody of the School District. It is apparent that the list was not maintained by the School District because it was required to do so by law. Clearly, the list was in the possession of the School District in its capacity as a school district, and as a school district it was entitled to the list. Thus, the list was in the "lawful possession and control" of the School District. We conclude, therefore, as did the parties, that the list in question is a public record as contemplated by sec. 19.21 (1), Stats. 1979–80.

The general rule is that any person may inspect a public record. The fact that the list is a public record within the purview of sec. 19.21 (1), Stats. 1979–80, and a request for its inspection was properly made, does not mean that the list must be produced for inspection. Section 19.21 (2), 1979–80, provides:

"(2) Except as expressly provided otherwise, any person may with proper care, during office hours and subject to such orders or regulations as the custodian thereof prescribes, examine or copy any of the property or things mentioned in sub. (1). Any person may, at his or her own expense and under such reasonable regulations as the custodian prescribes, copy or duplicate any materials, including but not limited to blueprints, slides, photographs and drawings. Duplication of university expansion materials may be performed away from the office of the custodian if necessary. Computer programs, as defined in s. 16.97 (4) (c), are not subject to examination under this subsection, but the data stored in the

memory of a computer is subject to the right of examination and copying."[2]

On its face, because the list is a public record, it is subject to inspection by Hathaway unless expressly provided otherwise. However, this court has not read this subsection literally. *Newspapers, Inc. v. Breier,* 89 Wis. 2d at 426. This section has been interpreted as stating that one manner in which the public's right to inspect public documents may be limited is by a statutory provision which embodies an exception to sec. 19.21 (1), Stats. (1979–80).

In *Gooding, supra,* we interpreted the section as a pronouncement of the common law, subject to the limitations on the inspection of records which existed at common law. We relied on the revisor's notes to the subsection which state that this "is believed to give expression to the general implied right of the public to consult public records." Laws of 1917, ch. 178, Bill No. 133, S. Thus, we declared:

"While it is possible to contend that the words are so clear as not to be subject to construction we are of the view that the common-law right of the public to examine records and papers in the hands of an officer has not been extended.

"We shall not go into the scope of the common-law right exhaustively or attempt to document our observations upon it. It is enough to say that there are numerous limitations under the common law upon the right of the public to examine papers that are in the hands of an officer as such officer." 251 Wis. at 372.

Thus, the public's right to inspect public records is not only subject to statutory provisions which expressly

[2] Section 19.21(2), Stats. 1979–80, was repealed by Laws of 1981, ch. 335, sec. 9, effective January 1, 1983. Former sec. 19.21 (2) has been replaced by secs. 19.35 and 19.36(1), 1981–82.

provide otherwise but is also subject to the limitations which existed under common law.

In *Youmans, supra,* we were called upon to determine whether a writ of mandamus should issue to compel Owens, the mayor of the City of Waukesha, to permit Youmans to examine certain papers in the custody of the mayor. We adopted a statement of the common-law right of inspection of public records made by the Vermont court which stated:

" 'We think it may be safely said that at common law, when not detrimental to the public interest, the right to inspect public records and public documents exists with all persons who have a sufficient interest in the subject-matter thereof to answer the requirements of the law governing that question.' " 28 Wis. 2d at 681, citing *Clement v. Graham,* 78 Vt. 290, 315, 63 A. 146 (1906).

. We concluded that:

"[T]here may be situations where the harm done to the public interest may outweigh the right of a member of the public to have access to particular public records or documents." *Youmans,* 28 Wis. 2d at 681.

After we outlined the procedure which must be followed to arrive at such a determination, we said that it is incumbent upon the custodian of the public record who refused the demand of inspection to "state specifically the reasons for this refusal." *Id.* at 682. We did recognize in *Youmans* that public policy favors the right of inspection and it is only in the *exceptional* case that inspection should be denied. Thus, the third exception to the public's right to inspect public documents is where the public interest in keeping a public record confidential outweighs the public's right to have access to the documents.

As evidenced by the foregoing discussion, the public's right to inspect documents is not absolute. *Gooding,*

*supra; Youmans, supra; Beckon v. Emery,* 36 Wis. 2d 510, 518, 153 N.W.2d 501 (1967) ; *Newspapers, Inc. v. Breier, supra.* We have concluded, however, where statutes, common law, or court decisions have not limited the public's right to examine records, "presumptively public records and documents must be open for inspection." *Newspapers, Inc. v. Breier,* 89 Wis. 2d at 426. In *Beckon, supra,* 36 Wis. 2d at 516, we stated that the "public policy, and hence the public interest, favors the right of inspection of documents and public records." *See also, State ex rel. Dalton v. Mundy,* 80 Wis. 2d 190, 196, 257 N.W.2d 877 (1977). There exists the legislative presumption that "where a public record is involved, the denial of inspection is contrary to the public policy and the public interest." *Newspapers, Inc. v. Breier,* 89 Wis. 2d at 426–27. Thus, the general presumption of our law is that public records shall be open to the public unless there is a clear statutory exception, unless there exists a limitation under the common law, or unless there is an overriding public interest in keeping the public record confidential.

Section 19.21, Stats., in light of prior cases, must be broadly construed to favor disclosure. Exceptions should be recognized for what they are, instances in derogation of the general legislative intent, and should, therefore, be narrowly construed; and unless the exception is explicit and unequivocal, it will not be held to be an exception. It would be contrary to general well established principles of freedom-of-information statutes to hold that, by implication only, any type of record can be held from public inspection.

Having set forth the exceptions to the public's right to inspect documents, we now analyze the School District's position that the list, a public record, should not be disclosed to Hathaway. The School District maintains that there is an express statutory provision which limits

the public's right of full access to public records. It relies on sec. 118.125, Stats. 1979–80, the pupil records statute, to support its contention. Section 118.125 provides as follows:

"**118.125 Pupil records.** (1) DEFINITIONS. In this section:

"(a) 'Pupil records' means all records relating to individual pupils maintained by an elementary or high school but does not include notes or records maintained for personal use by a teacher or other person who is required by the department under s. 115.28 (7) to hold a certificate, license or permit if such records and notes are not available to others nor does it include records necessary for, and available only to persons involved in, the psychological treatment of a pupil.

"(b) 'Behavioral records' means those pupil records which include psychological tests, personality evaluations, records of conversations, any written statement relating specifically to an individual pupil's behavior, tests relating specifically to achievement or measurement of ability, the pupil's physical health records and any other pupil records which are not progress records.

"(c) 'Progress records' means those pupil records which include the pupil's grades, a statement of the courses the pupil has taken, the pupil's attendance record and records of the pupil's school extracurricular activities.

"(2) CONFIDENTIALITY. All pupil records maintained by a public school shall be confidential . . ."[3]

The School District argues that, because pupil records are defined as "all records relating to individual pupils,"

---

[3] By the Laws of 1981, ch. 273, sec. 1, sec. 118.125(1)(d) was amended to provide:

"(d) 'Directory data' means those pupil records which include the pupil's name, address, telephone listing, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, photographs, degrees and awards received and the name of the school most recently previously attended by the pupil."

it includes the list of parental names and addresses of students in the School District. It is the School District's conclusion that, because the list is a pupil record, sec. 118.125 denies the third party's right to see or use the list which presumably is derived from individual pupil records.

Thus, the issue we address is whether the pupil record statute, sec. 118.125, Stats. 1979–80, encompasses a list of parents' names and addresses which creates an exception to the public records statute, sec. 19.21, 1979–80, such that Hathaway does not have the right to inspect the list.

Initially, we note that not *all* records concerning pupils are to be confidential. Only those records that fall within the express language which defines "pupil records" are afforded confidentiality. The language of sec. 118.125 (1) (a), Stats., requires that there be confidentiality only for records "relating to individual pupils." It is then clear that these records relating to individual pupils, generally listed as "behavioral records" and "progress records," and the specific items subsumed within each, are pupil records not subject to production. Section 118.125 (1) (b) and (c). Thus, exceptions to the public records act, sec. 19.21, are specifically, expressly set forth in sec. 118.125.

Our next step is to determine whether the list of parents' names and addresses, generated by a computer, and used by the School District for the mailing of information to parents of its students regarding its concerns, is a pupil record within the contemplation of sec. 118.125. Section 118.125 (1) (a) defines a pupil record as one "relating to *individual* pupils." (Emphasis supplied.) Here, the public record, the parent name-address list, does not relate to students at all, much less individual students. There is no identification of an individual student or correlation of an individual student with a par-

ticular parent or address. The list is purely what it purports to be, one which contains names of parents who have at least one child attending school in the district. In fact, the list does not indicate how many children the parents have in school, because their names appear on the list only once, regardless of how many offspring might be in the School District. The list does not relate to individual pupils as required by sec. 118.125 (1) (a), and we hold it is not a pupil record.

Clearly, the public record in question, the list, does not come within the purview of behavioral records, sec. 118.125 (1) (b), because not only does it again not relate to an individual pupil, it also does not contain any of the information which could be termed as behavioral. Just as clearly, the list does not fall within the contemplation of sec. 118.125 (1) (c), because it does not include information pertinent to a pupil's grades, courses, attendance, or extracurricular activities.

We agree that sec. 118.125, Stats., the pupil record statute, sets forth exceptions to the general rule that the public has the right to inspect public records under sec. 19.21. However, the public record in question, the list of parents' names and addresses, is simply not included within the operation of the pupil record statute.[4] The list is not related to individual pupils, is not a behavioral record, and is not a progress record. We conclude, therefore, that the public record before this court, the list of

---

[4] It is not necessary for us to decide whether the list in question is included within the definition of "directory data," sec. 118.125 (1) (d), Stats. 1981–82, because the general rule is that statutes are to be construed as relating to future and not to past acts. The exception is when a statute is procedural or remedial, rather than substantive, in which case the statute is generally given retroactive effect. *Gutter v. Seamandel,* 103 Wis. 2d 1, 17, 308 N.W.2d 403 (1981). The amendment which added "directory data" to the meaning of pupil record is neither procedural nor remedial in nature. Section 118.125(1) (d) will not be given retroactive effect.

parents' names and addresses, is not a pupil record. Thus, sec. 118.125 (1) does not create an exception to sec. 19.21 which includes a list of parents of pupils and the parents' addresses.

The School District also takes exception to the court of appeals' application of the doctrine of *expressio unius est exclusio alterius,* because it contends the definition of "pupil records" does not in any manner list or enumerate items in its purview. This doctrine, of express mention and implied exclusion, was recognized by this court in *State ex rel. West Allis v. Milwaukee L., H. & T. Co.,* 166 Wis. 178, 182, 164 N.W. 837 (1917), in which we stated:

" ' It is based upon the rules of logic and the natural workings of the human mind. But it is not to be taken as establishing a Procrustean standard to which all statutory language must be made to conform. On the contrary, it is useful only as a guide in determining the probable intention of the legislature, and if it should be clearly apparent, in any particular case, that the legislature did not in fact intend that its express mention of one thing should operate as an exclusion of all others, then the maxim must give way.' " Citing *Black on the Interpretation of Laws* (2d ed.) 219; *see also, Columbia Hospital Asso. v. Milwaukee,* 35 Wis. 2d 660, 669, 151 N.W.2d 750 (1967) ; *Gottlieb v. Milwaukee,* 90 Wis. 2d 86, 95, 279 N.W.2d 479 (1979).

In *Columbia Hospital, supra,* we stated that:

"Factually, there should be some evidence the legislature intended its application lest it prevail as a rule of construction despite the reason for and the spirit of the enactment." 35 Wis. 2d at 669.

We need not make the determination of whether the legislature in sec. 118.125, Stats., intended that an item not specifically mentioned be excluded from the definition of a pupil record, because the statute expressly provides that pupil records means "all records *relating to*

*individual pupils* maintained by a . . . school." (Emphasis supplied.) We have concluded that the list of parents' names and addresses in question is not a pupil record, because it does not relate to an individual pupil or to pupils at all. The list concerns parents of pupils, with no correlation made between pupils and parents. By no stretch of the imagination can the list be characterized as a behavioral or progress record regardless of the enumerations contained within subsections (b) and (c) of sec. 118.125(1). We do not rely on the doctrine of *expressio unius est exclusio alterius* to hold that the list is not a pupil record. Thus, the question of whether the doctrine should be applied when construing sec. 118.125 is not properly before this court.

Neither party has advised the court, nor are we aware, of any limitation which existed under common law which would act now to bar Hathaway's right to inspect the public record he requested from the School District. Thus, under the common law, Hathaway has the right to inspect the list of parents' names and addresses.

Finally, as previously noted, this court has recognized that there may exist a situation where the harm done to the public interest by permitting inspection may outweigh the public's right to have access to the public record. *Youmans, supra; Beckon, supra; Newspapers, Inc. v. Breier, supra.* In order to implement the presumption that the denial of inspection of a public record is contrary to the public policy and the public interest, we have set out legal standards and procedures to which a custodian of public documents must comply when a member of the public requests public documents.

When a request for inspection of the public document is made by a member of the public, the custodian of the document must "weigh the competing interests involved and determine whether permitting inspection would result in harm to the public interest which outweighs the

legislative policy recognizing the public interest in allowing inspection." *Newspapers, Inc. v. Breier,* 89 Wis. 2d at 427; *State ex rel. Journal Co. v. County Court,* 43 Wis. 2d 297, 305, 168 N.W.2d 836 (1969); *Beckon,* 36 Wis. 2d at 516; *Youmans,* 28 Wis. 2d at 682. Should the custodian refuse the request, he must "state specifically the reasons for this refusal," whose sufficiency is subject to scrutiny by the trial court in the event a court action ensues. *Youmans,* 28 Wis. 2d at 682–83; *State ex rel. Journal Co. v. County Court,* 43 Wis 2d at 305; *Newspapers, Inc. v. Breier,* 89 Wis. 2d at 427; *State ex rel. Bilder v. Delavan Tp.,* 112 Wis. 2d 539, 553, 334 N.W. 2d 252 (1983). The court must be satisfied that "the public-policy presumption in favor of disclosure is outweighed by even more important public-policy *considerations." Newspapers, Inc. v. Breier,* 89 Wis. 2d at 427.

Hathaway requested, in his letter dated June 4, 1981, that he "be permitted to examine and copy the names and addresses of parents of children in the District. The District maintains such parental names on address label." On July 15, 1981, the School District through its attorney stated that "the District takes the position that the parent names labels to which you refer do not constitute public records as defined by Wisconsin law. Therefore, your request for examination and copying of such address labels is denied." Again, in its return to petition for writ of mandamus, the School District stated that the list was not a public record and was, therefore, not available to Hathaway. The custodian of the list of parents' names and addresses, the School District, failed to state with specificity its reasons for withholding the public record. This makes it impossible for this court to make the contemplated review to determine whether the public policy in favor of disclosure is outweighed by even more important public-policy considerations. Obviously, plausible and perhaps valid reasons for withhold-

ing the list could have been specified by the School District. However, no reason was given by the School District for its refusal. This court has previously stated that:

"It is not the trial court's or this court's role to hypothesize reasons or to consider reasons for not allowing inspection which were not asserted by the custodian. If the custodian gives no reasons or gives insufficient reasons for withholding a public record, a writ of mandamus compelling the production of the records must issue. *Beckon, supra* at 518, states, '[t]here is an absolute right to inspect a public document in the absence of *specifically stated sufficient* reasons to the contrary.' (Emphasis supplied.)" *Newspapers, Inc. v. Breier,* 89 Wis. 2d at 427.

We thus conclude that, where a request for a public record is made and no statutory exception exists, no limitations under common law exist, and no specifically stated sufficient reasons to the contrary are presented by the custodian, a writ of mandamus must issue compelling production of the requested public record.

*By the Court.*—The decision of the court of appeals is affirmed, and the cause is remanded to the circuit court for the issuance of the writ of mandamus compelling the respondent, School District, to produce for inspection purposes the list of parents' names maintained by it on address labels as requested by the petitioner, Hathaway.

LOUIS J. CECI, J. (dissenting). I respectfully disagree with the holding of the majority. Although I agree with the majority's statement that the general rule is that any party may inspect a public record, I disagree with the majority's conclusion because I find

that the plain language of sec. 118.125, Stats., creates an express statutory exception to this rule.

In the seminal case concerning third-party inspection which was denied by a custodian of public records, *State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 681, 137 N.W. 2d 470, 139 N.W.2d 241 (1965), this court stated that the third-party's right to inspect public documents at common law is not absolute. Although the *Youmans* court recognized the strong public policy favoring the right of inspection of public records and noted that denial could occur only in exceptional cases, the opinion stated that limitations existed at common law and were not extended by the public records statute. *Id.* at 680–81. *See also, International Union v. Gooding,* 251 Wis. 362, 29 N.W.2d 730 (1947).[1]

In *Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 279 N.W.2d 179 (1979), this court again addressed the issue of the third-party's right to inspect public records. The *Breier* court stated the following:

"Nevertheless, we have concluded, where common-law limitations on the right to examine records and papers have not been limited by express court decision or *by statute,* that presumptively public records and documents must be open for inspection." *Id.* at 426. (Emphasis added.)

The language of sec. 19.21(2), Stats. 1979–80, is consistent with this conclusion. It states that, "Except as expressly provided otherwise," public records and documents must be subject to examination. Clearly, then, the right to examine documents may be limited by statute.

The majority recognizes that the public's right to examine records may be limited by statute, but nevertheless states that not all records concerning pupils are to be confidential. Rather, the majority opinion declares

---

[1] The public records statute was formerly sec. 18.01, Stats.

that only records "relating to individual pupils," as set forth in sec. 118.125(1)(a), Stats., are to be maintained confidentially. Because the majority concludes that a list of the names of parents of pupils does not relate to the individual pupils, they hold that it is not a public record.

However, I find this conclusion to be contrary to the plain language of the statute. Section 118.125(1)(a) defines "Pupil records" to mean *"all records* relating to individual pupils. . . ."  (Emphasis added.) Section 118.125(2) further provides that "All pupil records maintained by a public school shall be confidential. . . ." I do not believe that the legislature could have stated it more plainly. Section 118.125 provides for the confidentiality of all pupil records. Simply because this list containing the parents' names and addresses has been computerized and no longer contains the pupils' names does not make it separate and distinct from the pupils' records. The list was derived from and remains a part of the pupil record. Therefore, consistent with the reasoning of the *Breier* court and sec. 19.21(2), the right to examine this list has been limited by the statute.

I also believe that this interpretation is consistent with the development of the law concerning pupil records. A *Wisconsin Law Review* which analyzed both sec. 118.125 and its federal corollary, the Family Educational Rights and Privacy Act of 1974, stated the following concerning the passage of the two acts:

"In the 1970's, various studies of school record keeping revealed administrative practices which threatened the privacy interests of students and their parents. . . . Further, the studies revealed that little attention was given to the development of consistent policies by school administrators to balance the family's privacy interests against the schools' needs for information and third-party requests for that information." Comment, *Access*

*to Student Records in Wisconsin: A Comparative Analysis of the Family Educational Rights and Privacy Act of 1974 and Wisconsin Statute Section 118.125,* 1976 Wis. L. Rev. 975–76.

As a result of these studies, both the federal and Wisconsin statutes were passed in order to protect the privacy interests of the students and their families. *Id.* I believe that it is virtually impossible to separate a list of parents' names from the protection intended by the statute, that of the student's and family's privacy interests.

Although the requested list appears to be innocuous enough on its face, I believe that providing access to information tabulated from pupil records undercuts the legislative purpose of the statute, which is to protect the privacy interests of the student and the family. What the majority fails to take into account is that by removing the student's name from information taken from the pupil records, lists assembled by the school for any reason would no longer be protected by the statute. Thus, a list of families of students with special learning disabilities could be examined and copied by third parties. There is the danger that such "stigmatizing" information could be somehow correlated with the individual pupil possessing such a disability, or with the pupil's family, thus circumventing the privacy rights which the legislature sought to protect. As the Comment notes:

"Students and their parents are interested in ensuring that the school does not intrude upon their privacy by abusing collection data procedures. This interest is protected . . . by the implementation of safeguards—such as the provision of parental access to student files and the exertion of control over the release of those files to third parties—designed to protect the student from the collection and dissemination of misleading, stigmatizing information." Comment, *Access to Student Records in Wisconsin: A Comparative Analysis of the Fam-*

*ily Educational Rights and Privacy Act of 1974 and Wisconsin Statute Section 118.125,* 1976 Wis. L. Rev. 975, 979.

The language of sec. 118.125 indicates that the definition of pupil records is clearly all-encompassing, because the legislature chose to use the words *"all records* relating to individual pupils." The legislature did not restrict the statute's purview by utilizing words such as "all *personal* records relating to individual pupils." There is nothing in the statute indicating that it protects only personal information about the pupils.

Although the majority attempts to construe "behavioral records" and "progress records," as defined by sec. 118.125(1)(b) and (c), to relate to the term "records relating to individual pupils," I believe that the purpose behind the use of these terms is to clarify special circumstances in which parents, students, and third parties may gain access to the pupil records. For example, sec. 118.125(2)(b) provides for adult pupils or parents of minor pupils to be shown behavioral records in the presence of a person qualified to explain and interpret the records. This provision has been explained as representing "a careful balancing of potentially conflicting interests: the parent's interest in reviewing sensitive, possibly stigmatizing information, and the school's interest in avoiding misunderstanding and disruption of the parent-school relationship." Comment, *Access to Student Records in Wisconsin: A Comparative Analysis of the Family Educational Rights and Privacy Act of 1974 and Wisconsin Statute Section 118.125,* 1976 Wis. L. Rev. 975, 991. Thus, it appears that the legislature chose to define certain types of pupil records in order that it could clearly set out the circumstances in which the parent, child, or third party could gain access to pupil records, while keeping in mind the competing interests of all the parties involved.

What the majority fails to consider is that sec. 118.125 begins by defining pupil records as "all records relating to individual pupils," and after providing definitions of certain types of records included within this all-encompassing definition, again states that, "All pupil records maintained by a public school shall be confidential, except as provided in pars. (a) to (h)." These subsequent paragraphs delineate the specific circumstances in which parents, children, or other third parties may gain access to the records. Therefore, it is clear to me that the sole purpose behind the utilization of these specific terms is not to restrict the definition of pupil record, but rather to provide for the limited situations in which others may gain access to portions of the pupil record.

I believe that it is error for the court to cut away at the protections intended by sec. 118.125 by so narrowly construing its purview, despite the legislature's deliberate use of the broadest possible language concerning "all pupil records." Therefore, I dissent.