DIANNE GREENLEY Wisconsin Coalition for Advocacy
Pursuant to section 19.39, Stats., you ask my advice on the applicability of the public records law to certain documents that have been developed by employes of the Department of Health and Social Services and have been circulated for review and comment within the department. The department has denied your request on the ground that the documents are not "completed documents" and will not be released until "fully developed and approved" and reach "official status."
It is my opinion that the department's position may not fully comport with the state public records law, as discussed in this opinion. This opinion amplifies the earlier opinion on this subject, contained in 72 OP. Att'y Gen. 99 (1983).
 "Record" means any material on which written, drawn, printed, spoken, visual or electromagnetic information is recorded or preserved, regardless of physical form or characteristics, which has been created or is being kept by an authority. "Record" includes, but is not limited to, handwritten, typed or printed pages, maps, charts, photographs, films, recordings, tapes (including computer tapes), and computer printouts. "Record" does not include drafts, notes, preliminary computations and like materials prepared for the originator's personal use or prepared by the originator in the name of a person for whom the originator is working; materials which are purely the personal property of the custodian and have no relation to his or her office; materials to which access is limited by copyright, patent or bequest; and published materials in the possession of an authority other than a public library which are available for sale, or which are available for inspection at a public library.
Sec. 19.32 (2), Stats.
It appears that the documents have been created or are being kept by an authority. The issue is whether they nevertheless fall within the exclusion for "drafts, notes, preliminary computations and like materials prepared for the originator's personal use or *Page 101 
prepared by the originator in the name of a person for whom the originator is working . . . ."
It has been stated as a rule of statutory construction "that qualifying or limiting words or clauses in a statute are to be referred to the next preceding antecedent, unless the context or the evident meaning of the enactment requires a different construction." Jorgenson and another v. City of Superior,111 Wis. 561, 566, 87 N.W. 565 (1901). It is also said:
 Under rule reddendo singula singulis when one sentence . . . contains several antecedents . . . and several consequents . . . they are to be read distributively, so that each word . . . is applied to the subjects or consequents to which it appears by context most properly to relate and to which it is most applicable.
Mutual Fed. S L Asso. v. Sav. L. Adv. Comm., 38 Wis.2d 381,387, 157 N.W.2d 609 (1968).
It is my opinion that the terms "drafts, notes, preliminary computations and like materials" are all modified by the phrases "prepared for the originator's personal use or prepared by the originator in the name of a person for whom the originator is working . . . ."
This reading is consistent with the development of the legislation that resulted in the statute quoted above. The legislation was initially introduced as 1981 Senate Bill 250. The product that passed the senate, Engrossed 1981 Senate Bill 250, provided that "`[r]ecord' does not include drafts, notes preliminary computations and like writings prepared for the author's personal use." Id., page 6, lines 12-14. The phrase about preparations for one's superior was tacked on in Assembly Substitute Amendment 1 to 1981 Senate Bill 250, page 6, lines 11 and 12. It seems clear that the "personal use" qualification was thus intended to apply to all antecedents and the preparation for one's superior applies to any reasonably appropriate antecedent.
In construing the public records law it is important to keep in mind the mandate of section 19.31, which provides:
 Declaration of policy. In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons *Page 102 
are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employes who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employes whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.
Consonant with this mandate is the proposition that exceptions to the public records law should be narrowly construed. Hathaway v.Green Bay School Dist., 116 Wis.2d 388, 397, 342 N.W.2d 682
(1984).
It follows that exclusion of material prepared for the originator's personal use is to be construed narrowly. Most typically this exclusion may be invoked properly where a person takes notes for the sole purpose of refreshing his or her recollection at a later time. If the person confers with others for the purpose of verifying the correctness of the notes, but the sole purpose for such verification and retention continues to be to refresh one's recollection at a later time, it is my opinion the notes continue to fall within the exclusion. However, if one's notes are distributed to others for the purpose of communicating information or if notes are retained for the purpose of memorializing agency activity, the notes would go beyond mere personal use and would therefore not be excluded from the definition of a "record."
As to the exclusion of materials "prepared by the originator in the name of a person for whom the originator is working," it is my opinion the exclusion is likewise to be construed narrowly. Its terms contemplate interplay between the author and the author's superior. I assume the reason for the exclusion is to treat as a nullity language which is drafted for but which is not accepted by one's superior.
Your letter gives rise to the question whether a draft in the name of one's superior continues to fall within the draft exclusion if it is distributed to others before it is submitted to or approved by the *Page 103 
superior. In my opinion there should be some latitude for collegial exchange with respect to drafts. On the other hand, I would generally consider a draft to be taken beyond the intended scope of the draft exclusion when it is distributed to persons beyond those over whom the designated superior has jurisdiction. Here are some examples:
1. A bureau staff employe drafting an analysis in the name of the bureau director may circulate a draft analysis among bureau colleagues for review and comment without having the draft become a "record." If the draft is circulated outside the bureau it becomes a "record."
2. A bureau staff employe drafting a document in the name of a division administrator could circulate the draft in other bureaus in the division as well as his own bureau without having the draft lose draft status, because the division administrator would have jurisdiction over all personnel involved.
3. A document prepared in the name of a department secretary would retain draft status until it is distributed outside the department or is approved by the secretary.
Once a draft prepared for the signature of one's superior is approved by the superior for circulation, it is no longer a "draft." This is so whether the material is described as a "draft" or not and whether the circulation is considered "formal" or "official" or not. The key thing is that the person having responsibility for the disposition of the "draft" has decided to use it in a way that is beyond the drafting relationship that exists between the drafter and the superior.
As with most public records issues, determinations as to the exact status of a "draft" will have to be made on a case-by-case basis taking into account the specific facts involved. The foregoing guidance is not absolute, but I believe it provides a reasonable and useful framework for analyzing recurring questions concerning "draft" documents under the public records law. It is the framework my office will use in dealing with the subject.
Turning to the situation at hand, you describe the documents you requested as follows:
 The first was a draft policy on "fairness" in the Department's dealings with inmates of Mendota Mental Health Institute and *Page 104 
Winnebago Mental Health Institute. To the best of my knowledge it was distributed to Mendota Staff for their review sometime in the winter of 1985-86. It may also have been distributed to Winnebago staff.
 The second is a draft document on informed consent which has been prepared by a committee of doctors who work in the various state institutions. I believe that [th]ere may be a consent form and supporting documents. There may be additional documents on informed consent which were prepared by Division staff approximately a year and a half ago and which were circulated to the mental health institutes and state centers for the developmentally disabled.
In the first situation, the facts are not specific enough to enable a definite answer. It is clear that the material would not qualify as something prepared for one's "personal use." Under the guidelines set forth above, the status of the materials will depend on who is responsible for signing the policy on fairness and who authorized the circulation of the policy among institute staff.
If, for example, the policy on fairness is to be signed by the administrator of the division having jurisdiction over the institutions involved, the materials may be considered "drafts" to the extent their preparation and circulation occurs within the division at levels below the administrator. Thus a draft policy prepared by the staff of one institution, but for the signature of the division administrator, could be prepared and circulated among staff at the institution and would continue to qualify as a draft prior to the time it is submitted to the division administrator. However, if under these same facts the administrator approves the circulation of the "draft" policy for review and comment, the materials no longer fall within the draft exclusion under the public records law. Again, the draft exclusion is intended to relieve governmental systems of materials which are drafted but are not accepted by the person for whom they are created. Once the person for whom a draft is created accepts the product for the purpose of circulation for review and comment, the material becomes a "record" for that purpose.
The other materials you request relating to a policy on informed consent may be analyzed in the same way, except your reference to a committee raises new issues. Where there is a formally constituted committee having a specified membership and mission, the work *Page 105 
product of the committee may call for a case-by-case analysis to determine its status for the purpose of the public records law. For the purpose of your request I am assuming that the committee referred to is not a formally constituted and distinct entity and thus no further special analysis need be undertaken, and the individual and collective work product of the doctors referred to may be analyzed in the way discussed above, without regard to the existence of a "committee."
DJH:RWL *Page 106