## THE MILWAUKEE JOURNAL, and Dennis Chaptman, Plaintiffs-Respondents,

### v.

## BOARD OF REGENTS OF the UNIVERSITY OF WISCONSIN SYSTEM, Donna Shalala, Chancellor of the University of Wisconsin-Madison, and Hugh V. (Pat) Richter, Athletic Director of the University of Wisconsin-Madison, Defendants-Appellants.

### Court of Appeals

*No. 90–0205. Submitted on briefs November 8, 1991.—Decided June 27, 1991.*

(Also reported in 472 N.W.2d 607.)

For the defendants-appellants the cause was submitted on the briefs of *Melany Stinson Newby* of *Office of Administrative Legal Services* of Madison.

For the plaintiffs-respondents the cause was submitted on the brief of *Linda M. Clifford* of *LaFollette & Sinykin* of Madison.

Before Eich, C.J., Dykman and Sundby, JJ.

EICH, C.J. The University of Wisconsin Board of Regents and other university officials (collectively, "the university") appeal from a judgment ordering them to disclose the names of applicants for the positions of athletic director and football coach at the University of Wisconsin-Madison.

The issue is whether sec. 230.13(2), Stats., which authorizes the secretary of the Department of Employee Relations (DER) to keep records of the "[n]ames of applicants other than those certified for employment"[1] closed to the public, constitutes a mandatory exception to the state's open records law shielding the names of applicants for unclassified positions in the state service

---

[1]The precise language of pertinent portions of sec. 230.13, Stats., is as follows: "[T]he secretary . . . may keep records of the following personnel matters closed to the public: . . . (2) Names of applicants other than those certified for employment."

934

from public disclosure. We conclude that it does not and affirm the judgment.

The facts are not in dispute. In 1989, the University of Wisconsin fired its athletic director, reassigned its football coach to other duties and began recruiting to fill both positions. Both are unclassified positions in the state civil service system.

The Milwaukee Journal sought access to the names of applicants for the two positions, filing a written request for the information with the Madison campus chancellor Donna Shalala. Shalala denied the request, taking the position that all records of the applicants' names were closed under sec. 230.13(2), Stats. The Journal then filed a mandamus action seeking release of the information. The university's position remained the same: its answer to the complaint asserted that sec. 230.13(2) "require[d] closure of the records . . .."

The trial court ruled that sec. 230.13(2), Stats., did not apply to the positions, and that even if it did, the university, in deciding to deny access to the requested information, had failed to exercise the discretion required by the statute's permissive language (*"may* keep [the] records . . . closed to the public").

The university appeals, repeating the arguments made below. Like the trial court, we see sec. 230.13(2), Stats., as inapplicable to the two positions, and we conclude that the statute neither mandates nor authorizes closure of the records.

Wisconsin has a strong public policy of openness in government which is embodied in the state's open records law:

> **Declaration of policy.** In recognition of the fact that a representative government is dependent upon an informed electorate, *it is declared to be the public policy of this state that all persons are entitled*

*to the greatest possible information regarding the affairs of government and the official acts of those officers and employes who represent them.* Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the . . . duties of officers and employes . . .. To that end, [the open records laws] shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied. Sec. 19.31, Stats.

In light of that policy, "[t]he general presumption of our law is that public records shall be open to the public unless there is a clear statutory exception, unless there exists a limitation under the common law, or unless there is an overriding public interest in keeping the public record confidential." *Hathaway v. Joint School Dist. No. 1 of Green Bay,* 116 Wis. 2d 388, 397, 342 N.W.2d 682, 687 (1984). The university does not claim that any common-law rule limits application of the open records law to the Journal's request, nor does it argue that some "overriding public interest" demands secrecy. As indicated, it bases its refusal to allow access to the information entirely on sec. 230.13(2), Stats., which it claims provides a specific and mandatory[2] public-records-law exemption for the' names of applicants for jobs in the unclassified state service.

---

[2]As we discuss in greater detail at note 5, sec. 230.13(2) is built upon the permissive "may" ("the secretary *may* keep . . . closed"), and we believe that fact alone belies the university's claim that it provides a mandatory exception to the open records law. In any event, we hold in this opinion that, whatever the statute's import in this regard, it is inapplicable to the two positions.

We begin our consideration of the university's argument with the proposition that any exception to the "general rule" of openness and disclosure must be "narrowly construed." *Oshkosh Northwestern Co. v. Oshkosh Library Bd.*, 125 Wis. 2d 480, 482, 373 Wis. 2d 459, 461 (Ct. App. 1985).

> Exceptions [to openness] should be recognized for what they are, instances in derogation of the general legislative intent, and should, therefore, be narrowly construed; and *unless the exception is explicit and unequivocal, it will not be held to be an exception.* It would be contrary to general well established principles of freedom-of-information statutes to hold that, by implication only, any type of record can be held from public inspection.

*Hathaway,* 116 Wis. 2d at 397, 342 N.W.2d at 687 (emphasis added). We see no such "clear," "explicit" or "unequivocal" exception in sec. 230.13(2), Stats.

Chapter 230, Stats., embodies the state's employment relations law. Among other things, it establishes a civil service, provides for the hiring and firing of state employees and generally governs their evaluation and overall treatment. DER, through its secretary, administers the law.

Chapter 230, Stats., divides state employment into two categories: the "classified" service and the "unclassified" service. Sec. 230.08. The unclassified service comprises positions specifically designated in sec. 230.08(2). Generally, the list includes elected officials and officers appointed by the governor, deputy departmental secretaries, division administrators and a variety of other—mostly policy-making or administrative—positions. As for the university, all faculty and

937

academic staff positions—including the athletic director and football coach—are unclassified. Sec. 230.08(2)(d).

The classified service is defined in the statute as: "all positions not included in the unclassified service." Sec. 230.08(3), Stats. Generally, the classified service comprises those labor, clerical, technical and professional positions involved in the day-to-day workings and operations of state government; and the bulk of ch. 230 sets forth in detail the recruitment, application, examination, certification, hiring, promotion and termination processes applicable to such employees.

Appointments to positions in the classified service are made pursuant to a "merit" selection plan based upon competitive examinations. Sec. 230.15(1), Stats. The examinations are part of a process culminating in the "certification" of the top five applicants for a particular position to the appointing authority; and sec. 230.25(2) directs that the final appointment "shall be made . . . to all positions in the classified service from among those certified . . .." Secs. 230.25(1) and (2).

Unlike positions in the classified service, there is no examination or certification process for filling unclassified positions in government. The legislature has given the employing authority—here the university—full discretionary authority to appoint to these positions.

With that background in mind, we turn to sec. 230.13(2), Stats., which, as indicated, allows the DER secretary to keep confidential the names of applicants for state jobs "other than those [who have been] certified for employment."

We believe the statutory language can be read in at least two ways. It can be read to allow the names of *all* persons applying for state employment—whether in the classified or unclassified service—who have not been certified for employment to be kept confidential. Because

938

the certification process is limited to classified positions no applicants for positions in the unclassified service are ever certified. Thus, reading the statute in this manner would permit withholding the names of all applicants for any unclassified position in state service (including that of athletic director and football coach) as persons "other than those certified for employment."

But the statute may also be read to reach the opposite result. And, mindful of our obligation to construe claimed exceptions to the open records law narrowly, we adopt that reading. We believe the statute's specific reference to applicants who are "certified for employment" would have little meaning if it were intended to encompass two categories of positions, one having a certification process and one not. As we have noted, certification is a means of narrowing the field of applicants for positions within the classified service. It has no application or meaning with respect to unclassified positions. It follows that the legislature's use of such a designation reasonably may be read to limit the application of sec. 230.13(2), Stats., to classified positions.

Thus, as we read the statute, the only names that may be withheld from public scrutiny under its provisions are those of applicants for *classified* positions who were *not* certified for employment. The statute simply does not apply to positions in the unclassified service.

So read, the statute reflects what we believe to be a reasonable legislative judgment that while there might be valid reasons to give the secretary some discretion to allow the names of that large group of initial applicants for classified jobs to be kept confidential, the state has no business shielding the names of the finalists for public positions from public view. It makes no sense to us to read the statute, as the university and the dissenting opinion do, to keep secret the names of all applicants

who did *not* survive the first stages of the hiring process for the day-to-day operational jobs in the classified service *and also* the names of those applicants comprising the group from which the occupants of some of the most influential policy-making positions in government are selected—leaving only those people certified for the day-to-day jobs exposed to public scrutiny.

We decline the university's invitation to construe sec. 230.13(2), Stats., to grant persons applying for these top-level policy-making government positions—persons appointed and paid to serve the public at the highest levels of government—the right to keep secret from the public the very existence of their applications.

The language of sec. 230.13(2), Stats., does not "explicit[ly]" or "unequivocal[ly]" exempt the names of all applicants for positions in the unclassified service from the open records law, and we will not interpret or construe it to do so. *Hathaway,* 116 Wis. 2d at 397, 342 N.W.2d at 687. We agree with the Journal that the absence of any clear direction in sec. 230.13(2), that secrecy is mandated for applications for high-level government or university positions such as those at issue here, is strong evidence of the legislature's intent that the public interest in an open appointment process must take precedence over whatever public policy considerations might favor secrecy.[3]

---

[3]The university also contends that the DER secretary has interpreted the statute as a blanket exemption from the open records law for applicants for unclassified positions in the civil service, and that that interpretation is entitled to deference. We disagree on both points.

First, the "interpretation" is a 1985 DER "departmental bulletin"—a document signed by a DER division administrator which the trial court found was ambiguous at best and most likely did not even apply to applicants for unclassified positions. The

940

Whether, as the university maintains, the names of applicants for university positions—and indeed all unclassified positions in the state service—*should* be shielded from public view is a question of broad public policy properly directed to the legislature. If the university desires a blanket rule mandating secrecy for the names of job applicants at any level, it should press its case in the legislature, rather than asking the courts to rule contrary to the expressed public policy of the state by creating an exception to the open records law through the interpretation of an ambiguous statute.[4]

---

bulletin purports to list two categories of records: (1) "Records of Classified Employes which are Considered to be Open"; and (2) "Records Closed to the Public." The administrator has included in the latter group "materials used for evaluating an applicant for employment," citing sec. 230.13, Stats., as authority for the inclusion. We agree with the trial court that a fair reading of the bulletin and the manner in which it is organized and headed indicates that the listing applies only to records of classified employees.

Second, the deference paid by courts to the interpretation of statutes by administrative agencies "is the result of a course of uniform interpretation over a period of time." *Local 695 v. LIRC,* 154 Wis. 2d 75, 84, 452 N.W.2d 368, 372 (1990). Thus the rule of deference does not apply "unless the administrative practice is long continued, substantially uniform and without challenge by governmental authorities and courts." *Id.* at 83, 452 N.W.2d at 372 (citations omitted). Where—as is the case here—"there is no evidence of any special expertise or experience, the weight to be afforded an agency interpretation is no weight at all." *Id.* at 84, 452 N.W.2d at 372.

[4]For other cases holding that exemptions from public records laws are public policy determinations to be made by legislatures, not courts, *see Board of Regents v. Atlanta Journal,* 378 N.E.2d 305 (Ga. 1989); *City of Dubuque v. Telegraph Herald, Inc.,* 297 N.W.2d 523, 527 (Iowa 1980); *Hubert v. Harte-Hanks Texas*

Consistent with our obligation to narrowly construe purported exceptions to the state's open records law, we hold that sec. 230.13(2), Stats., neither mandates nor authorizes withholding the names of those persons applying for the positions of athletic director or football coach. The statute applies solely to classified civil-service positions, and the trial court properly granted judgment in the Journal's favor.[5]

---

*Newspapers, Inc.*, 652 S.W.2d 546, 551 (Tex. App. 1983); *Forum Publishing Co. v. City of Fargo*, 391 N.W.2d 169, 171 (N.D. 1986); and *Attorney General v. School Committee of Northampton*, 375 N.E.2d 1188, 1190 n.3 (Mass. 1978).

[5]We also agree with the trial court that even if sec. 230.13(2), Stats., were held to apply to applicants for unclassified positions such as athletic director or football coach, the plain language of the statute—"the secretary . . . *may* keep records . . . closed"—commits that authority to the secretary's discretion. The word "may" generally is construed as permissive, not mandatory, unless a contrary reading is required to carry out the intent of the legislature. *State v. Christopherson*, 36 Wis. 2d 574, 583–84, 153 N.W.2d 631, 637 (1967). Here, as we have indicated, the intent of the legislature—and the rule of the courts—is that exceptions to public disclosure are to be construed narrowly, and we see no indication in sec. 230.13(2) that it was intended to be a mandatory, rather than a permissive, exemption.

And no public officer or employee may shield a public record from inspection except in cases where the public interest in confidentiality outweighs the public interest in openness. "There is an absolute right to inspect a public document in the absence of *specifically stated sufficient* reasons to the contrary. *Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 427, 279 N.W.2d 179, 184 (1979) (emphasis in original). If a records custodian decides not to allow inspection, he or she "must state specific public-policy reasons for the refusal . . . [and] satisfy the court that the public-policy presumption in favor of disclosure is outweighed by even more important public policy considerations . . .." *Id.* It is a case-by-

*By the Court.*—Judgment affirmed.

SUNDBY, J. *(dissenting).* The Milwaukee Journal's petition for writ of mandamus is misdirected. The Board of Regents, the UW-Madison chancellor and the UW-Madison athletic director have no discretion to release the names of applicants for the positions of ath-

case balancing of competing interests; and in any case "[i]f the custodian gives no reasons or . . . insufficient reasons for withholding a public record, a writ of mandamus compelling the production of the records must issue." *Id.*

No such balancing was undertaken here. Chancellor Shalala, citing only sec. 230.13(2), Stats., flatly refused to disclose the information. Thus, even if the statute were held to apply, the university has failed to exercise its discretion in the matter and the trial court properly ordered disclosure of the names.

Finally, we reject any suggestion in the university's brief that the DER administrator's "bulletin" *(see* note 3, *supra)* constitutes an appropriate exercise of discretion which we should uphold. The exercise of discretion is not the equivalent of "unfettered decisionmaking." *Hedtcke v. Sentry Ins. Co.,* 109 Wis. 2d 461, 471, 326 N.W.2d 727, 732 (1982) (citation omitted). It must be "more than an unexplained choice between alternatives." *Argonaut Ins. v. LIRC,* 132 Wis. 2d 385, 391, 392 N.W.2d 837, 839 (Ct. App. 1986). "Unless there is evidence that the [decisionmaker] has undertaken a reasonable inquiry and examination of the facts as the basis of his [or her] decision, [that] decision will be disregarded by this court. Such a decision on its face shows an abuse of discretion for failure to exercise discretion." *Id.* at 392, 392 N.W.2d at 839–40, quoting *McCleary v. State,* 49 Wis. 2d 263, 277–78, 182 N.W.2d 512, 520 (1971). And in cases involving the withholding of public records from public scrutiny, the exercise of discretion must also involve, as we have noted earlier in this opinion, a balancing of competing public policy interests. In any guise, the exercise of discretion is much more than a column listing in a departmental bulletin accompanied only by a nonspecific statutory reference.

letic director or head football coach at the UW-Madison because the Department of Employment Relations has closed these records pursuant to sec. 230.13(2), Stats. I therefore respectfully dissent.

Section 230.13, Stats., provides:

> **Closed records.** [T]he secretary and the administrator may keep records of the following personnel matters closed to the public:
>
> (1) Examination scores and ranks and other evaluations of applicants.
>
> (2) Names of applicants other than those certified for employment.
>
> (3) Dismissals, demotions and other disciplinary actions.
>
> (6) Pay survey data obtained from identifiable nonpublic employers.
>
> (7) Names of nonpublic employers contributing pay survey data.

Pursuant to this section, the department issued bulletins closing applicants' personnel records which contain materials used for evaluating an applicant for employment, including the Applicant Registration Form and reference materials. Department of Employment Relations Bulletin P–157 (Dec. 28, 1982); Bulletin MRS–19 (Apr. 26, 1985). The university officials contend that the department thereby closed to the public the names of applicants for the positions of athletic director and football coach.

The majority concludes that sec. 230.13(2), Stats., applies only to employees in the state classified service and did not authorize the department to close to the public the names of applicants for the positions of athletic director and football coach. I disagree.

The majority creates an ambiguity in sec. 230.13(2), Stats., where none exists and cures the ambiguity by

adding words to an unambiguous statute. I am unable to find anything in the language of sec. 230.13(2) which justifies the majority's action. On its face, sec. 230.13(2) is not limited to the classified service. It is located in subch. II, entitled "Civil Service." "Civil service" "means *all* offices and positions of trust or employment in the service of the state," except the militia. Section 230.03(6), Stats. (emphasis added). The civil service includes the classified service and the unclassified service. Section 230.08(1), Stats. It is undisputed that the positions of athletic director and football coach are in the unclassified service. When the legislature wished to limit a statute within subch. II to the classified service, it said so. *See, e.g.,* secs. 230.09 (classification), 230.15 (appointments, promotions, changes in classified service) and 230.25, Stats. (certification, appointments and registers). When it wished to limit a statute to the unclassified service, it also said so. *See, e.g.,* sec. 230.148, Stats. (unclassified service reappointments). Since sec. 230.13(2) is not limited by its language or context, it should be applied to all positions subject to subch. II.

The majority finds that sec. 230.13(2), Stats., must be narrowly construed because it creates an exception to the Public Records Law. Section 230.13 was created as sec. 16.095, Stats., by sec. 22, ch. 270, Laws of 1971. When that history is placed in the context of the developed case law, it is clear that sec. 230.13 simply codified and clarified a well-recognized common-law exception.

*Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 279 N.W.2d 179 (1979) is a good place to begin a study of the previous public records law because the case was decided under sec. 19.21(2), Stats. (1973), which was in effect when sec. 16.095, Stats., was enacted. That statute was interpreted by the supreme court as a statement of the common law, leaving in place the limitations on the

inspection of public records that existed at common law. *Breier,* 89 Wis. 2d at 426, 279 N.W.2d at 183. The court pointed out that under the common law, the right to inspect public records was not absolute. *Id.* at 429, 279 N.W.2d at 185.

The *Breier* court, and the *Youmans* court in an earlier decision, *State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 137 N.W.2d 470, 139 N.W.2d 241 (1965), concluded that the legislative policy expressed in the Open Meeting Law carried over to the inspection of public records and documents. *Breier,* 89 Wis. 2d at 430, 279 N.W.2d at 185.

When sec. 16.095, Stats. (1971), was created, the Open Meeting Law permitted closed sessions of governmental bodies for the purpose of considering the employment of any public employee. Section 66.77(3)(b), Stats. (1971). Under *Breier* and *Youmans,* the legislative policy expressed in this exception to the requirement of open meetings carried over to the inspection of public records and documents. Therefore if any legislative intent can be inferred from the state of the law when sec. 16.095 was created, the legislature appears to have intended to further limit the right to inspect public employees' personnel records. Parenthetically, I note that when the legislature created the modern Public Records Law, it continued to use the Open Meeting Law exemptions as indicative of public policy. Section 19.35(1)(a), Stats.

Given the public policy that personnel matters may be closed to the public, I cannot accept that when the legislature created sec. 16.095(2), Stats. (1971) [now sec. 230.13(2), Stats.], it intended to permit appointing authorities to close the records of applicants for positions in the classified service, but required them to disclose the applicants for positions in the unclassified service.

946

The majority opinion does not address whether any part of sec. 230.13, Stats., other than sub. (2) applies to unclassified employees. Admittedly, none of the other subsections are directly involved in this appeal. However, the subject matter of the other provisions provides a clue to the legislative intent as to sub. (2). For example, sub. (3) lists dismissals, demotions and other disciplinary actions. Historically, such records have always been subject to closure. I cannot accept that the legislature intended to change the law in this respect, without a clear expression of that intent. The alternative is to ascribe to the legislature an intent that one subsection of sec. 230.13 applies only to the classified service while others apply also to the unclassified service. That result is wholly illogical.

I conclude that secs. 230.01(1) and (2), Stats., reveal a public policy supporting the closing of personnel records. Exposing personnel records to public scrutiny would inhibit attracting and retaining competent personnel in the public service. In this case, we need not consider whether the Board of Regents, the chancellor, or the athletic director properly denied disclosure based on this public policy because they had no discretion to exercise. The decision to close the names of the applicants for the positions of UW-Madison athletic director and football coach was made by the department under sec. 230.13(2), Stats.

Department of Employment Relations Bulletin MRS–19 makes clear that the department intended its instructions to state agencies and appointing authorities to apply to all employees in the state service. The introductory paragraph states "This bulletin is issued to interpret the Open Records Law and clarify which documents in the Employe Personnel Record ("P" file) of state *civil service* employees are open to the public, and

which may be closed to the public." (Emphasis added.) The civil service includes the unclassified service as well as the classified service.

The majority concludes that "a fair reading of the bulletin" indicates that the list of records therein includes only records of classified employees. Majority op. at 941 n.3. I disagree. The majority's reading requires us to assume that the department which is charged with administering the state public service does not know the meaning of "civil service." I do not agree that ascribing that defect of knowledge to the department is a "fair reading" of the bulletin.

The majority's construction of sec. 230.13(2), Stats., requires that we judicially amend the statute to read: "Names of applicants *for positions in the classified service* other than those certified for employment." (Italicized words added.) We are not to add words to an unambiguous statute unless an interpretation of a statute leads to a ludicrous or plainly unintended result. *State ex rel. Girouard v. Jackson County Circuit Ct.,* 149 Wis. 2d 578, 584, 439 N.W.2d 833, 836 (Ct. App. 1989) (Sundby, J., dissenting), *rev'd,* 155 Wis. 2d 148, 454 N.W.2d 792 (1990).

The majority concludes that in any event, the university "failed to exercise its discretion in the matter . . .." Majority op. at 943 n.5. The university officials had no discretion to exercise. Acting under sec. 230.13(2), Stats., the department closed the personnel records containing the names of applicants for positions in the public service, including the positions of athletic director and football coach. The Journal's quarrel is with the secretary and the administrator of the department, or, more likely, with the legislature.